**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MARISSA RYS a/k/a MARISSA TREEN,**

                                        **Plaintiff,**

                **v.**                                                          **6:19-CV-1251**
                                                                                **(FJS/ATB)**

**STEVEN GRIMM, Superintendent, Clinton Central School**
**District; MIQUEL GRIMM, Coach, Clinton Central**
**School District; CLINTON CENTRAL SCHOOL DISTRICT;**
**MARY LOU LAUCHERT, Board President, Clinton Central**
**School District; TIMOTHY THOMAS, Vice President,**
**Clinton Central School District; MEGAN BURDICK, Board**
**Member, Clinton Central School District;**
**AMY FRANZ, Board Member, Clinton Central School**
**District; LUKE PERRY, Board Member, Clinton Central**
**School District; ERICA SHAW, Board Member, Clinton**
**Central School District; COURTNEY ZOLLER, Board**
**Member, Clinton Central School District; SHAUN CARNEY,**
**Middle School Principal, Clinton Central School District;**
**DOUGLAS FIORE, Athletic Director, Clinton Central**
**School District; MELINDA BURDICK BOWE, Attorney,**
**Clinton Central School District; ELIZABETH HOFFMAN,**
**Attorney, Clinton Central School District; and JANE DOE(S)**
**and JOHN DOE(S),**

                                        **Defendants.**

---

**APPEARANCES**                                      **OF COUNSEL**

**BOSMAN LAW FIRM, LLC**                             **A.J. BOSMAN, ESQ.**
3000 McConnellsville Road
Blossvale, New York 13308
Attorneys for Plaintiff

**OFFICE OF FRANK W. MILLER**                        **CHARLES C. SPAGNOLI, ESQ.**
6575 Kirkville Road                                 **FRANK W. MILLER, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendants Steven Grimm,
Miquel Grimm, Lauchert, Thomas, Burdick,
Franz, Perry, Shaw, Zoller, Carney, Fiore,

and Clinton Central School District

**COSTELLO, COONEY & FEARON, PLLC**        **PAUL G. FERRARA, ESQ.**
211 West Jefferson Street
Syracuse, New York 13202
Attorneys for Defendants Burdick Bowe
and Hoffman

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff filed her initial complaint in this action on October 10, 2019, *see* Dkt. No. 1, and

her Amended Complaint on December 31, 2019, *see* Dkt. No. 30.  In her Amended Complaint,

Plaintiff asserted the following eleven causes of action:

> (1) Gender Discrimination under Title VII and Title IX (1st and
> 4th causes of action);
>
> (2) Gender-based Hostile Work Environment under Title VII and
> Title IX (2nd and 5th causes of action);
>
> (3) Retaliation under Title VII and Title IX (3rd and 6th causes of
> action);
>
> (4) Violation of Plaintiff's rights under the Fourteenth
> Amendment's Equal Protection Clause based on gender
> discrimination, brought pursuant to 42 U.S.C. § 1983 (7th
> cause of action);
>
> (5) Violation of Plaintiff's rights under the Fourteenth
> Amendment's Equal Protection Clause for subjecting her to a
> gender-based hostile work environment, brought pursuant to 42
> U.S.C. § 1983 (8th cause of action);
>
> (6) Violation of Plaintiff's rights under the First Amendment's Free
> Speech Clause by retaliating against her for complaining about
> and opposing gender discrimination and her rights under the
> First Amendment's Freedom of Association Clause by
> discriminating and retaliating against her for associating with

an "openly gay student," brought pursuant to 42 U.S.C. § 1983 (9th cause of action);

(7) Violation of Plaintiff's rights under the Fourth and Fourteenth Amendments by maliciously prosecuting her without basis or probable cause, brought pursuant to 42 U.S.C. § 1983 (10th cause of action); and

(8) Violation of Plaintiff's rights under the Fourteenth Amendment's Due Process Clause by depriving her of her liberty interest in her good name and reputation without affording her a name-clearing hearing, brought pursuant to 42 U.S.C. § 1983 (11th cause of action).

*See generally* Dkt. No. 30.

Pending before the Court is Defendants Steven Grimm, Miquel Grimm, Clinton Central School District, Mary Lou Lauchert, Timothy Thomas, Megan Burdick, Amy Franz, Luke Perry, Erica Shaw, Courtney Zoller, Shaun Carney, and Douglas Fiore's (hereinafter collectively "the District Defendants") motion to dismiss Plaintiff's amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  *See* Dkt. No. 35 (District Defendants' motion to dismiss).

## II. DISCUSSION

### A.  Standard of review

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Interpharm, Inc. v. Wells Fargo Bank,*

---

[1] Plaintiff's Amended Complaint also contains claims against Defendants Melinda Burdick Bowe and Elizabeth Hoffman, neither of whom appears to be an employee of Defendant Clinton Central School District.  These Defendants did not move to dismiss Plaintiff's claims against them.

*Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted).  However, the court is not

required to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting [*Twombly*, 550 U.S.] at 570,

127 S. Ct. 1955).  A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955).  Therefore, under this

standard, a plaintiff must support her claims with sufficient factual allegations to show "more

than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).  Thus, if

the plaintiff has not "'nudged [her] claims' . . . 'across the line from conceivable to plausible,'" the

court must dismiss the complaint.  *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

## B.  Title VII and Title IX Claims against the District Defendants

### 1.  *Claims against the individual District Defendants*

A plaintiff cannot hold individuals personally liable under either Title VII or Title IX.

*See Egbuna v. Syracuse City Sch. Dist.*, No. 05-CV-0112 (NAM/GHL), 2005 WL 8171086, *2

(N.D.N.Y. Nov. 15, 2005) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)

("individual defendants with supervisory control over a plaintiff may not be held personally

liable under Title VII.")) (other citation omitted); *Patenaude v. Salmon River Cent. Sch. Dist.*,

No. 3:03-CV-1016, 2005 WL 6152380, *5, (N.D.N.Y. Feb. 16, 2005).  Although it is not clear

from her amended complaint against whom Plaintiff is asserting her Title VII and Title IX

claims, in her reply, she states that she is not asserting these claims against the individual

Defendants.  *See* Dkt. No. 39 at 1 n.2.  Based on Plaintiff's clarification that she is asserting her Title VII and Title IX claims only against Defendant Clinton Central School District (hereinafter "Defendant CCSD"), the Court denies the District Defendants' motion to dismiss these causes of action against the individual District Defendants as moot.

### 2.  *Claims against Defendant CCSD*[2]

#### a.  *Gender/Sexual Orientation Discrimination*

Title VII discrimination claims require a plaintiff to allege that "'(1) [s]he belong[s] to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'"  *Bowan v. N.Y. State Hous. & Cmty. Renewal*, No. 18 Civ. 11596 (ER), 2020 WL 6505291, *3 (S.D.N.Y. Nov. 5, 2020) (quotation and other citation omitted).  Only the fourth element is at issue here.

Termination of employment is considered an adverse employment action.  *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation omitted).   "Although a complaint 'need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination' to state a Title VII claim, it must offer 'plausible support to a minimal inference of discriminatory motivation.'"  *Kairam v. West Side GI, LLC*, 793 F. App'x 23, 27 (2d Cir. 2019) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297,

---

[2] Whether analyzing Title VII or Title IX claims, courts apply the same standards.  *See Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 361 (S.D.N.Y. 2017) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (citations omitted)) (other citation omitted); *AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 153 (S.D.N.Y. 2004) (citing *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995)) (footnote omitted).

311 (2d Cir. 2015)).  A discriminatory inference can arise from circumstances involving the employer treating employees who are not in the protected class more favorably or, circumstantially, from "'the sequence of events leading to the plaintiff's discharge.'"  *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 128 (N.D.N.Y. 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)).

Construing all allegations as to discriminatory intent in favor of Plaintiff, the Court finds that the Amended Complaint fails to allege sufficient facts that would plausibly support a minimal inference of discriminatory intent.  Plaintiff alleges that, in the 7-8 months leading up to her termination, the District Defendants subjected her to "excessive scrutiny" in both her teaching and coaching capacity while not subjecting similarly-situated male coaches, who coached "openly gay" students or students of the opposite gender, to such scrutiny.  *See* Dkt. No. 30 at ¶ 18.  Plaintiff attempts to bolster this claim by pleading that she was required to attend meetings to address her alleged "relationship with student KS"; however, Plaintiff fails to provide any factual basis for inferring that the District Defendants subjected her to these meetings based on her gender or sexual orientation.  *See* Dkt. No. 30 at ¶ 18.  Similarly, other than stating in a conclusory manner that male coaches were not subject to such "scrutiny," Plaintiff has not alleged any facts that would support an inference that Defendant Carney's restricting of Plaintiff's ability to meet with student KS in school, Defendant Carney's monitoring of Plaintiff's interactions with KS, or Defendant Steven Grimm's "intimations and insinuations" of Plaintiff's romantic and/or sexual interest in KS were motivated by gender or sexual orientation.[3]  *See* Dkt. No. 30 at ¶ 18.  Without Plaintiff augmenting her allegations with minimal

---

[3] Plaintiff also asks the Court to infer that this "excessive scrutiny" was motivated by her gender or perceived sexual orientation based on her allegations that (1) Defendant CCSD retained an independent investigator to investigate Plaintiff's conduct with KS, and the investigator asked her

factual matter, the Court is left to speculate on the details as to how this alleged conduct occurred, which, had it been provided, might have permitted the Court to draw a reasonable inference of discriminatory motive.

Likewise, Plaintiff's remaining allegations regarding the District Defendants' discriminatory acts and policies amount to bare, conclusory statements that they (1) "discriminated against Plaintiff because of her gender and that of a student . . . ," *see* Dkt. No. 30 at ¶ 22, and (2) "endors[ed], allow[ed], and personally engag[ed] in discriminatory bias" based on "gender, sexual orientation, sexual stereotyping, and perceived sexual orientation" by endorsing Carney's, CCSD's, and "others'" actions, *see id.* at ¶¶ 7–12. *See Wiley*, 407 F. Supp. 3d at 129 (collecting cases and finding that the plaintiff's bare claim that white employees charged with sexual misconduct were treated differently than him was an insufficient "naked assertion"). The Court finds that these allegations fail to state a plausible claim because they are general assertions that do not contain sufficient facts to give notice to the District Defendants of the grounds upon which the claims of endorsement and discrimination rest. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court grants the District Defendants'

---

about her sexual orientation and whether she had ever kissed another woman; and (2) Defendant Lauchert made a statement that Plaintiff should be in jail for committing criminal, unlawful, or unprofessional acts. *See* Dkt. No. 30 at ¶ 18. However, the only thing Plaintiff has alleged that is directed towards gender or sexual orientation is that an independent investigator asked her about her sexual orientation and if she has ever kissed a woman, which is not necessarily indicative of gender or sexual orientation-based discrimination. *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 364-65 (S.D.N.Y. 2016) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)) (dismissing Title IX gender harassment claim where use of word rapist to describe the plaintiff, under the facts as pled in the plaintiff's complaint, did not plausibly suggest gender based motive because mere use of words having "sexual content or connotations" is "not automatically considered to be gender based discrimination"). Without factual allegations to illuminate the context of the independent investigation, it is not reasonable for the Court to infer that such questions were gender or sexual orientation based. As such, these allegations also are insufficient to permit the Court to infer a discriminatory motive based on gender or sexual orientation.

motion to dismiss Plaintiff's Title VII and IX gender discrimination claims against Defendant

CCSD without prejudice and grants Plaintiff's request for the opportunity to file a motion

seeking leave to amend her amended complaint to assert this claim against Defendant CCSD.

### b.  *Hostile Work Environment*

Under both Title IX and Title VII, a gender-based hostile work environment claim

requires the plaintiff to plead facts showing that the complained-of conduct (1) "'is objectively

severe or pervasive'" to constitute a hostile or abusive environment in the eyes of a reasonable

person, (2) creates an environment "'that the plaintiff perceives as hostile or abusive,'" and (3)

"'creates such an environment because of the plaintiff's sex.'"  *Patane v. Clark*, 508 F.3d 106, 113

(2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001) (internal citations

and punctuation omitted)).  Whether the work environment is objectively severe or pervasive

requires the court to evaluate the totality of the circumstances, including (a) the frequency of the

discriminatory conduct, (b) the severity of the conduct, (c) whether it involves physical threats or

humiliation, as opposed to a mere offensive utterance, and (d) whether it unreasonably disrupts

the employee's performance.  *See Yarrington v. Candor Cent. Sch. Dist.*, 3:18-CV-1250

(FJS/ML), 2020 WL 1493920, *6 (N.D.N.Y. Mar. 27, 2020) (quotation omitted).  For a hostile

work environment claim to survive a Rule 12(b)(6) motion to dismiss, the plaintiff is only

required to plead facts sufficient to support a finding that she encountered harassment that

adversely altered her employment conditions in the eyes of a reasonable person, which is not a

high bar.  *See Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.

2003)).

Plaintiff alleges that the District Defendants subjected her to a hostile work environment by "intimating and insinuating" that she was romantically or sexually interested in her "openly gay" student, KS; "actively undermin[ing]" her in her teaching and coaching positions; making "slanderous statements" about her that she committed unlawful conduct for which she should be in jail; and subjecting her to "excessive scrutiny" in both her teaching and coaching positions to which they did not subject similarly-situated male coaches. *See* Dkt. No. 30 at ¶¶ 7, 18, 20. These allegations do not plausibly state a claim for a hostile work environment. As discussed above, the "intimations and insinuations" about Plaintiff's romantic or sexual interest in student KS are generalized, conclusory, and do not contain sufficient facts to permit the Court to infer a discriminatory motive based on gender or sexual orientation. Moreover, construing Plaintiff's amended complaint in a light most favorable to her, the alleged "intimations and insinuations" seem at best to be infrequent off-hand remarks. *See Bembry v. Darrow*, 97 F. Supp. 2d 281, 287 (N.D.N.Y. 2000) (stating that "[i]nfrequent remarks or episodes of harassment will not warrant relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can be termed pervasive" (citation omitted)).

Similarly, even assuming that Defendant Lauchert's "slanderous statements" and Defendants Steven Grimm's and Miquel Grimm's "undermining" of her teaching and coaching position "for self-serving reasons" were sufficiently severe and/or pervasive, Plaintiff has failed to plead any facts or circumstances to indicate these acts were based on her gender or sexual orientation. Finally, as discussed above, the "excessive scrutiny" that Plaintiff alleges she experienced does not plausibly appear to be sex-based, nor does it plausibly appear to be for a harassing purpose, severe enough, or frequent enough to be objectively hostile. *See Miller v. City of Ithaca*, No. 3:10-cv-597, 2010 WL 3809842, *7-*8 (N.D.N.Y. Sept. 22, 2010)

(dismissing the plaintiff's hostile work environment claim as conclusory where the plaintiff merely alleged that white officers were both treated less favorably and more closely scrutinized than minority officers and did not plead sufficient factual allegations from which the court could plausibly conclude that the alleged incidents were based on the plaintiff's race and did "'not permit the court to infer more than the mere possibility of misconduct'" (quoting *Iqbal*, at 1950)).

Overall Plaintiff's claim is based on generalized descriptions of statements or acts that were neither frequent, severe, nor gender-based, and were sporadically made over the course of the 7-8 months leading up to her termination.  Construing all allegations in favor of Plaintiff, the statements seem at best to be "offensive utterances," as opposed to physically threatening or humiliating statements, and the amended complaint does not indicate in nonconclusory terms that the District Defendants significantly or unreasonably disrupted the performance of her duties prior to terminating her.  Therefore, although Plaintiff may subjectively believe her work environment was hostile, her amended complaint does not contain sufficient factual material to support a plausible claim that the District Defendants subjected her to an objectively hostile environment that was based on gender.  As such, the Court grants the District Defendants' motion to dismiss Plaintiff's Title VII and IX hostile work environment claims against Defendant CCSD without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert these claims against Defendant CCSD.

### c.  *Retaliation*

Under both Title VII and Title IX, employers are prohibited from retaliating against employees for complaining about employment discrimination.  *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (Title VII); *Jackson v. Birmingham Bd. Of*

*Educ.*, 544 U.S. 167, 173 (2005) (Title IX); *Baldwin v. N.Y. State Univ. of N.Y., Coll. at Buffalo*, 690 F. App'x 694, 697 (2d Cir. 2017) (summary order) (Title IX).  A prima facie retaliation case requires a showing that "(1) [the plaintiff] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing *Kessler v. Westchester Department of Social Services*, 461 F.3d 199, 205-06, 207-10 (2d Cir. 2006) ("Kessler")) (other citation omitted).  For a retaliation claim to survive a Rule 12(b)(6) motion, the plaintiff is merely required to give the defendants fair notice of the retaliation claims and the grounds on which such claims are based. *See Viscecchia v. Alrose Allegria LLC*, 117 F. Supp. 3d 243, 256 (E.D.N.Y. 2015) (citing *Swierkiewicz*, 534 U.S. at 512, 122 S. Ct. 992).

As to the first element, filing grievances is a protected activity.  *See Brown v. Middaugh*, 41 F. Supp. 2d 172, 186 (N.D.N.Y 1999).  Plaintiff alleges that her Union Representative, John King, complained to Defendant Carney on her behalf on November 1, 2017, about directives for Plaintiff to treat gay students differently than other students.  *See* Dkt. No. 30 at ¶ 19.  This allegation satisfies the first two elements as Plaintiff's union representative made the complaint on her behalf, and it is reasonable to infer that Defendant CCSD knew about the complaint since he made the complaint to Defendant Carney, the Principal of Defendant CCSD's Middle School. Moreover, the third element is satisfied because Plaintiff has alleged that Defendant CCSD terminated her on June 12, 2018.  *See* Dkt. No. 30 at ¶¶ 18-19.

With regard to the fourth element, a plaintiff can show the requisite causal connection between the protected activity and the adverse employment action indirectly by showing that the adverse action occurred soon after the protected activity.  *See Wiley*, 407 F. Supp. 3d at 130

(quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001)) (other

citation omitted).  Although the Second Circuit has indicated that there is no bright-line outer

limit for temporal proximity, most courts within this Circuit have found that three months is

usually the outer limit unless a plaintiff provides other indicia of retaliatory motive.  *See*

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001); *Wiley*, 407 F.

Supp. 3d at 130; *Lambert v. Trump Int'l Hotel and Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y.

2018).  Plaintiff alleges that Defendant CCSD terminated her on June 12, 2018, in retaliation for

having Mr. King complain to Defendant Carney on November 1, 2017.  *See* Dkt. No. 30 at

¶¶ 18-19.  These two events are separated by approximately 7 months, meaning that the temporal

proximity between Mr. King's complaint and Plaintiff's termination is too attenuated to satisfy a

"causal connection" between the complaint and the termination.  *See* Dkt. No. 35-2 at 7-8.

Plaintiff urges the Court to look at both Mr. King's November complaint and the above-

discussed acts of "excessive scrutiny" that followed as evidence of retaliation.  However, even if

the Court were to find that incidents of excessive scrutiny constituted adverse employment

actions, these incidents would still be insufficient to infer a causal connection.  *See Stoddard v.*

*Eastman Kodak Co.*, 309 F. App'x 475, 479-80 (2d Cir. 2009) (summary order) (finding on

summary judgment that, even assuming that heightened scrutiny from one's boss was an adverse

employment action, a two month proximity between a complaint of gender discrimination and

such scrutiny of plaintiff was insufficient to state a retaliation claim because the plaintiff did not

provide grounds for the court to find a causal connection between the complaint and the

scrutiny).

Plaintiff does not argue that the alleged "excessive scrutiny" she faced was the adverse

employment action that she suffered, but, rather, that the Court should consider such scrutiny as

evidence from which it could draw the inference that Defendant CCSD had a retaliatory motive for terminating her after she complained.  *See* Dkt. No. 39 at 11-13.  However, applying the Second Circuit's reasoning in *Stoddard*, the Court finds that Plaintiff has not pled sufficient factual matter to support a finding that a causal connection existed between the "excessive scrutiny" to which the District Defendants allegedly subjected her and Mr. King's complaint. Thus, the alleged "excessive scrutiny" cannot make up for the approximately 7-month time gap between the union representative's complaint and Plaintiff's termination.  Accordingly, the Court finds that Plaintiff has not sufficiently pled facts to show a causal connection between the disparate treatment complaint that Mr. King made on Plaintiff's behalf and Defendant CCSD's decision to terminate her employment sufficient to state a plausible retaliation claim.

Plaintiff also alleges that she participated in a 50-h hearing on November 19, 2018, pursuant to the Notice of Claim that she filed on July 9, 2018, and that, as a result, the District Defendants retaliated against her by maliciously initiating criminal proceedings against her under New York Penal Law 156.05.  *See* Dkt. No. 30 at ¶ 32.  Since Plaintiff's filing of her claim on July 9, 2018, is a protected activity, her participation in a 50-h hearing to further her claim is also a protected activity.  Therefore, this activity satisfies the first element of her retaliation claim. The 50-h hearing occurred only two months before the District Defendants allegedly filed a criminal action against her without probable cause.  *See* Dkt. No. 30 at ¶ 32.  Thus, these two events occurred in sufficiently close temporal proximity to satisfy the causal connection requirement.  However, as discussed below, Plaintiff has not plausibly alleged the elements of her malicious prosecution claim, meaning that the alleged malicious prosecution occurring in January 2019 cannot satisfy the third retaliation element (*i.e.*, that the District Defendants took an adverse employment action against Plaintiff).  As a result, Plaintiff has failed to allege an

adverse employment action occurring close enough to a protected activity to plead a sufficiently plausible retaliation claim.[4]  Therefore, the Court grants the District Defendants' motion to dismiss Plaintiff's Title VII and Title IX retaliation claims against Defendant CCSD without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert her retaliation claims against Defendant CCSD.

### C. Plaintiff's malicious prosecution claim against the individual District Defendants pursuant to 42 U.S.C. § 1983[5]

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the individual District Defendants maliciously prosecuted her in violation of her Fourth and Fourteenth Amendment rights, which harmed her reputation, caused her financial loss, and deprived her of her liberty.  "'In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of h[er] rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'"  *Frost v. N.Y. City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)).  "'To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the

---

[4] However, because the Court has granted Plaintiff's request for the opportunity to file a motion seeking leave to amend her malicious prosecution claim, if Plaintiff's amendment is sufficient to state a plausible malicious prosecution claim, she would likewise satisfy this element of her retaliation claim.

[5] In his Affidavit, Defendant Steven Grimm states that Defendants Amy Franz and Courtney Zoller were not members of the District's Board of Education as of June 2018 and had no involvement with the District at the time the prosecution was initiated in January 2019.  *See* Dkt. No. 35-1 at ¶ 2-3; Dkt. No. 35-2 at 17.  Plaintiff does not appear to dispute this point.  *See* Dkt. No. 39 at 17-18.  Thus, to the extent that Plaintiff asserts her malicious prosecution claim against Defendants Franz and Zoller, the Court grants the District Defendants' motion to dismiss this claim against them with prejudice.

initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the

proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and

(4) actual malice as a motivation for defendant's actions.'" *Id.* (quoting [*Manganiello*, 612 F.3d]

at 161). With regard to the first element, "[a] jury may permissibly find that a defendant initiated

a prosecution where he 'fil[ed] the charges[.]'" *Manganiello v. City of N.Y.*, 612 F.3d 149, 163

(2d Cir. 2010) (quoting *Ricciuti*, 124 F.3d at 130).

Plaintiff alleges that Defendant Steven Grimm "initiated, continued and/or condoned the

criminal prosecution of Plaintiff," *see* Dkt. No. 30 ¶ 7, and that the District Defendants "caused

the initiation of a criminal proceeding against" her in January 2019 for violating New York Penal

Law 156.05, which prohibits "unauthorized use of a computer," *see id.* at ¶ 32. Beyond the

conclusory allegation against Defendant Steven Grimm and the only slightly more specific

allegation against "Defendants," Plaintiff fails to address the first element of her malicious

prosecution claim. The amended complaint does not specify how Defendant Steven Grimm or

the District Defendants "initiated" the criminal proceedings against her; and, thus, it is not clear

whether Plaintiff is claiming that the District Defendants filed charges against her or did nothing

more than report a crime to the police or give testimony. As such, the Court finds that Plaintiff

has failed to allege the first element of her malicious prosecution claim.

As to the second element, Plaintiff has pled that, on September 24, 2019, the criminal

prosecution was terminated in her favor with an Order of Dismissal with prejudice, based on a

failure to make out a *prima facie* case. *See* Dkt. No. 30 at ¶ 33. This allegation satisfies the

second malicious prosecution element. However, the dismissal in Plaintiff's favor based on the

absence of a *prima facie* case does not necessarily show that she has satisfied the third element

of her claim, *i.e.*, lack of probable cause. *See, e.g., Bertuglia v. City of New York*, 133 F. Supp.

3d 608, 627 (S.D.N.Y. 2015) (stating that "dismissals of indictments based on insufficient evidence for the prosecution to make out a prima facie case do not vitiate the presumption of probable cause from a grand jury indictment" (citations omitted)).  "'Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.'"  *Frost*, 980 F.3d at 243 (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)) (footnote omitted).  "[I]n general, '[p]robable cause is a mixed question of law and fact.'"  *Id.* (quoting *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017)).  "[H]owever, 'where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court.'"  *Id.* (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)).

Plaintiff's amended complaint fails to allege what facts or circumstances Defendants relied on to initiate the criminal prosecution against her.  In fact, the only reference Plaintiff makes to facts or circumstances is a conclusory statement that "Defendants knew or should have known that there was no factual or legal basis for initiating or continuing the prosecution."  *See* Dkt. No. 30 at ¶ 34.  Therefore, the Court finds that Plaintiff has failed to allege sufficient facts to state the third element of her malicious prosecution claim.  *See Leibovitz v. City of New York*, No. 14-CV-7106 (KAM) (LB), 2018 WL 1157872, *15-*16 (E.D.N.Y. Mar. 2, 2018) (dismissing plaintiff's malicious prosecution claim where complaint failed to adequately plead any non-conclusory allegations of fact indicating a lack of probable cause to prosecute).  Additionally, since Plaintiff's allegations are bare and conclusory as to the malice element, that element necessarily hinges on there being a lack of probable cause since malice may be inferred where probable cause is lacking.  *See Sherman v. Holecek*, No. 3:16-cv-01342 (BKS/DEP), 2018 WL 4119119, *4 (N.D.N.Y. Aug. 29, 2018) (stating that the malice element requires allegations

that the defendant had wrong or improper motive for commencing the criminal proceeding and "an inference of malice sufficient to overcome a Rule 12(b)(6) motion can be inferred from a lack of probable cause") (citing *Laboy v. County of Ontario*, 668 F. App'x 391, 394 (2d Cir. 2016) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996))); *Hilfiger v. Bradlees, Inc.*, No. 99-cv-4677, 2002 WL 737477, at *11, 2002 U.S. Dist. LEXIS 7191 (S.D.N.Y. Apr. 25, 2002)).  As a result, Plaintiff has failed to sufficiently allege the fourth element of her malicious prosecution claim as well.

Accordingly, for the above-stated reasons, the Court grants the District Defendants' motion to dismiss Plaintiff's malicious prosecution claim against them without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert this claim against all of the individual District Defendants except for Defendants Franz and Zoller.

### D.  First Amendment retaliation claims under 42 U.S.C. § 1983

First Amendment retaliation claims under section 1983 require a public plaintiff to show that "(1) h[er] speech was constitutionally protected, (2) [s]he suffered an adverse employment decision, and (3) a causal connection exists between h[er] speech and the adverse employment determination against h[er], so that it can be said that h[er] speech was a motivating factor in the determination."  *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (citation omitted).  For speech to be constitutionally protected, a public plaintiff "must have spoken as a citizen on a matter of 'political, social, or other concern to the community.'"  *Atkinson v. New York State Olympic Reg'l Dev. Auth.*, 822 F. Supp. 2d 182, 193 (N.D.N.Y. 2011) (quoting [*Morris*, 196 F.3d at 110] (quotation marks and citation omitted)).  Generally, gender-based employment

discrimination complaints are not considered protected speech because "such complaints are typically personal in nature and relate solely to the employee's unique employment situation as opposed to systemic discrimination." *Id.* (citation omitted); *see also Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (holding that lawsuit seeking to redress personal grievances was not protected speech under the First Amendment because it did not seek to advance a public purpose so it was not speech on a matter of public concern).  Indeed, the Second Circuit strongly reiterated this point recently, stating that

> [f]iling a grievance raising [one's] own alleged injuries is a paradigmatic example of an action that "principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances" and that we have therefore held "does not qualify for First Amendment protection" from retaliation.

*Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (quoting *Montero*, 890 F.3d at 399-400 (internal quotation marks, citation, and alteration omitted)).

In addition, courts look at the forum in which the complaint is filed when analyzing whether it relates to a matter of public concern because employee complaints made "'using an internal grievance procedure in many cases will not seek to communicate to the public or advance a political or social point of view beyond the employment context.'"  *Id.* at 95 (quoting *Borough of Duryea, Penn. v. Guarnieri*, 564 U.S. 379, 398, 131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011)).  Similarly, for a public employee to bring a First Amendment freedom of association claim, the employee's associational conduct is also required to relate to a matter of public concern.  *See Cobb v. Pozzi*, 363 F.3d 89, 102-03 (2d Cir. 2004) (citations omitted).

Here, Plaintiff alleges that individual District Defendants Carney, Grimm,[6] and Lauchert violated her First Amendment right to free speech when they "relied upon rank hearsay, falsely manufactured and/or exaggerated bases for her termination in retaliation" for complaints that Plaintiff's union representative, John King, made on her behalf during a meeting with Defendant Carney on November 1, 2017. *See* Dkt. No. 30 at ¶ 19.  Mr. King allegedly protested that "Plaintiff cannot be directed to treat gay students differently than students without such sexual orientation"; and Mr. King also opposed "discrimination in public employment and education based on gender and/or sexual stereotyping, and/or sexual orientation and/or perceived sexual orientation." *See* Dkt. No. 30 at ¶¶ 19, 63.  Plaintiff also alleges that the District Defendants violated her First Amendment freedom of association rights when they discriminated and retaliated against her based on "her association with an 'openly gay' student." *See* Dkt. No. 30 at ¶ 63.  These alleged First Amendment protected activities are all personal to Plaintiff, as opposed to matters of public concern, as they focus solely on Plaintiff's complaints of her personal treatment and how the District Defendants allegedly retaliated against her for associating with a gay student, as opposed to focusing on systemic discrimination.[7]  Additionally, Mr. King made these alleged complaints in a private meeting with employees of Defendant CCSD, not in a public meeting or forum.  Likewise, Plaintiff has not alleged anything indicating that her "association with an 'openly gay' student" was intended to convey a public message or "advance

---

[6] Plaintiff has not specified whether she is asserting these allegations against Defendant Steven Grimm or Defendant Miquel Grimm.  The Court reminds her that she must be specific about which Defendants she is making her allegations against in any future pleadings.

[7] To the extent that Plaintiff alleges any discriminatory practice, policy or custom, such allegations consist of conclusory and formulaic language; and, thus, she fails to plausibly allege any systemic discrimination. *See* Dkt. No. 30 at ¶ 29.

a political or social point of view beyond the employment context" that would make it a public concern.  Based on these allegations, and in light of the Second Circuit's recent decision in *Agosto*, the Court finds that Plaintiff has failed to satisfy the first element of her § 1983 First Amendment retaliation claim and grants the District Defendants' motion to dismiss this claim against them with prejudice.

### E.  Fourteenth Amendment Equal Protection Claim[8]

The Fourteenth Amendment's Equal Protection Clause requires the government to treat all similarly situated individuals alike.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, 'protect[s] public employees from various forms of discrimination, including hostile work environment and disparate treatment' . . . ."  *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).  Courts analyze § 1983 equal protection claims based on gender the same way that they analyze Title VII gender discrimination claims.  *See DiPizio*, 745 F. App'x at 388 (quoting [*Vega*, 801 F.3d] at 88); *Negron v. Ulster Cnty.*, No. 1:08-CV-692 (FJS/RFT), 2012 WL 3597398, *5 (N.D.N.Y. Aug. 20, 2012).

---

[8] All of Plaintiff's Section 1983 claims require that she allege that (1) she suffered a violation of her rights granted under the Constitution or United States law, and (2) an individual acting "under color of state law" committed the conduct that constitutes such violation.  *DiPizio v. Empire State Dev. Corp.*, 745 F. App'x 385, 388 (2d Cir. 2018) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (internal quotation marks omitted)).  The parties do not dispute that the individual District Defendants were acting under color of state law.

To hold an individual defendant liable under § 1983, the plaintiff must show that the defendant was personally involved in the challenged conduct. *See Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003). The Second Circuit recently held "that after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' *Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937. . . . The violation must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Direct participation requires "''intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.''" *Zehner v. Jordan-Elbridge Bd. of Educ.*, No. 5:11-CV-1202 (NAM/ML), 2019 WL 4083040, *7 (N.D.N.Y. Aug. 29, 2019) (quoting [*Victory v. Pataki*, 814 F.3d 47,] 67 [(2d Cir. 2016)] (quoting *Provost*, 262 F.3d at 155)).

### 1. *Individual District Defendants*[9]

#### a. *Gender/Sexual Orientation Discrimination claims*

##### (i) *Defendant Steven Grimm*

Plaintiff alleges that Defendant Steven Grimm (1) made "intimations and insinuations that Plaintiff had romantic or sexual interest in KS," *see* Dkt. No. 30 at ¶ 18; (2) accused Plaintiff of missing work to spend time with KS, *see id.*; (3) initiated, continued, and/or condoned the criminal prosecution of Plaintiff, *see id.* at ¶ 6; and (4) recommended that Plaintiff be terminated, *see id.* Given that gender discrimination claims are analyzed under the same standards as Title VII claims, for the reasons discussed earlier, these allegations against Defendant Steven Grimm do not raise an inference of a gender-based discriminatory motive; and, thus, Plaintiff's discrimination claim against him fails. Therefore, the Court grants the District Defendants' motion to dismiss Plaintiff's equal protection claim against Defendant Steven Grimm based on gender discrimination without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert this claim against him.

---

[9] For purposes of this analysis, the Court assumes that Plaintiff is asserting her § 1983 claims against the individual District Defendants in their individual capacities. To the extent that Plaintiff is asserting her § 1983 claims against the individual District Defendants in their official capacities, such claims are redundant of her claims against Defendant CCSD. Therefore, the Court dismisses any such claims. *See Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498-99 (N.D.N.Y. 2017) (stating that "'district courts have [regularly] dismissed official capacity claims against individuals as redundant or unnecessary where *Monell* claims are asserted against an entity'" (quoting *Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002))).

### (ii)    *Board Member Defendants*

As to Defendants Mary Lou Lauchert, Timothy Thomas, Megan Burdick, Amy Franz, Luke Perry, Erica Shaw, and Courtney Zoller (collectively the "Board Member Defendants"), Plaintiff alleges that (1) they terminated her upon Defendant Grimm's recommendation, *see* Dkt. No. 30 at ¶ 6; (2) they "endors[ed], allow[ed], and personally engag[ed] in discriminatory bias," *see id.* at ¶ 8; and (3) in May of 2018 Defendant Lauchert, who is the Board President, stated that Plaintiff should be in jail for engaging in criminal or unlawful conduct, *see id.* at ¶¶ 7-8.  For the same reasons discussed above, these allegations fail to raise an inference of gender discriminatory motive as they are merely conclusory and, thus, do not state a claim for direct gender discrimination against the Board Member Defendants.  As a result, the Court grants the District Defendants' motion to dismiss Plaintiff's equal protection claim based on gender discrimination against the Board Member Defendants without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert this claim against them.

### (iii)    *Defendants Carney and Fiore*

Plaintiff alleges that Defendant Carney interfered with her contract rights, subjected her to discriminatory bias and prejudice, and endorsed, allowed, and personally engaged in discriminatory bias based on gender, sexual stereotyping, sexual orientation, and perceived sexual orientation by stating "to Plaintiff and others that the student, KS, was 'openly gay'" and later (a) suggesting that Plaintiff should or did treat KS differently than others, and (b) "intimating and insinuating that Plaintiff had a romantic or sexual interest in KS."  *See* Dkt. No. 30 at ¶ 9.  Similarly, Plaintiff alleges that Defendant Fiore committed the same conduct as

Defendant Carney except for the statement allegedly made to Plaintiff and others that KS was "openly gay." *See id.* at ¶ 10.  As discussed above when addressing Plaintiff's Title VII and Title IX claims, these allegations are insufficient to provide a plausible inference of gender-based bias because they are broad, generalized statements; and, to the extent that the alleged statements and insinuations do contain factual matter, nothing in Plaintiff's amended complaint indicates, in a nonconclusory manner, that Defendants Carney and/or Fiore made these statements because of Plaintiff's gender and/or sexual orientation.  Accordingly, the Court grants the District Defendants' motion to dismiss Plaintiff's equal protection claims based on gender discrimination against Defendants Carney and Fiore without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert this claim against them.

### (iv)     *Defendant Miquel Grimm*

Plaintiff alleges that Defendant Miquel Grimm (1) "solicited and/or encouraged false allegations as against the Plaintiff, all while knowing such allegations were false," and (2) endorsed, allowed, and personally engaged in "discriminatory bias based on gender, sexual stereotyping, sexual orientation, and perceived sexual orientation" by (a) "endorsing actions by [Defendants] Carney, CCSD and others that the student, KS was 'openly gay,' and suggesting Plaintiff did or should treat her differently from other student athletes, and (b) "intimating and insinuating that Plaintiff had a romantic or sexual interest in KS." *See* Dkt. No. 30 at ¶ 12.  For the same reasons discussed above concerning Plaintiff's equal protection claims against Defendants Carney and Fiore, Plaintiff has failed to allege sufficient facts to raise an inference of gender-based motive for any of Defendant Miquel Grimm's alleged conduct.  Additionally, other

than alleging in conclusory terms that Defendant Miquel Grimm "personally engaged" in discriminatory bias, Plaintiff has not alleged that she directly participated in any discriminatory conduct, which is required to state a claim.  As such, the Court grants the District Defendants' motion to dismiss Plaintiff's equal protection claim based on gender discrimination against Defendant Miquel Grimm without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert this claim against her.

### b.  Hostile Work Environment claims

As discussed above, Plaintiff's hostile work environment claim is premised upon generalized descriptions of statements and conduct that occurred intermittently during the 7- to 8-month period that led up to her termination.  These alleged statements and acts were not frequent, severe, or gender-based; and, reading them in a light most favorable to Plaintiff, at best they constitute offensive acts and utterances that are couched in conclusory terms.  As a result, Plaintiff has not provided sufficient factual material in her amended complaint to allege a plausible claim that any of the individual District Defendants, singularly or together, subjected her to an objectively hostile work environment based on gender or sexual orientation. Accordingly, the Court grants the District Defendants' motion to dismiss Plaintiff's equal protection claims based on a hostile work environment against the individual District Defendants without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert this claim against them.[10]

_____

[10] Given that Plaintiff has failed to allege an objectively hostile work environment, it is unnecessary to address the individual liability of each of the individual District Defendants..

### 2. *Plaintiff's* **Monell** *claim against Defendant CCSD*

"A school district can only be held liable under [§ 1983] if its 'policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury.'" *Egbuna*, 2005 WL 8171086, at *5 (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)).  This means that a school district can be held liable under § 1983 for conduct that was undertaken pursuant to its own unlawful policy or custom or for the actions of "an individual whose actions may fairly be said to represent official policy." *Id.* at *6; *see also Roe v. City of Waterbury*, 542 F.3d 31, 36-37 (2d Cir. 2008) (stating that, "[w]here a plaintiff seeks to hold a municipality liable for a 'single decision by [a] municipal policymaker[],' *Pembaur*, 475 U.S. at 480, 106 S. Ct. 1292, the plaintiff must show that the official had final policymaking power . . ." (internal citation omitted)).  However, where a plaintiff has failed to plead a plausible § 1983 claim against any district official, her § 1983 claim against the school district under a *Monell* theory of liability will also fail.  *See Aquino v. City of New York*, 1:16-cv-1577-GHW, 2017 WL 2223921, *1 (S.D.N.Y. May 19, 2017); *Lee v. Cnty. of Onondaga*, 5:13-CV-01285-BKS-TWD, 2016 WL 9441472, *7 (N.D.N.Y. Aug. 19, 2016) (stating that "[i]t is well-established that absent an underlying constitutional violation, there can be no claim for municipal liability'" (citation omitted)).

Moreover, in *Agosto*, the Second Circuit clarified that a municipal employee's authority or discretion to make a "final decision" is not equivalent to that employee having the authority to set the municipality's policy for reaching such decision.  *See Agosto*, 982 F.3d at 98 (citations omitted).  State law determines whether an individual has the "'authority to adopt rules for the conduct of [the municipal] government,'" *id.* (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992)); and a municipality merely "'going along with discretionary decisions made by [its]

subordinates'" does not convert them into final policymakers, *id.* at 100 (quoting [*City of St. Louis v. Praprotnik*, 485 U.S. 112,] 130 [(1988)]; *Auriemma*, 957 F.2d at 401 ("Authority to make a final decision need not imply authority to establish rules")).

### a. Gender/Sexual Orientation Discrimination

As discussed above, Plaintiff fails to state a gender discrimination claim against the individual Defendants. As a result, the Court finds that her § 1983 gender discrimination claim against Defendant CCSD fails as well. Alternatively, even assuming *arguendo* that Plaintiff had stated a plausible gender discrimination claim against the individual Defendants, the Court would still conclude that her claim against Defendant CCSD fails. A superintendent of a school district is not a final policymaking official with regard to terminating District employees. *See Simpson v. Enlarged City Sch. Dist. of Newburgh*, No. 05 Civ. 5144 (GAY), 2007 WL 2789512, *6 (S.D.N.Y. Sept. 26, 2007) (citing N.Y. Educ. Law § 3012). Thus, to the extent that Plaintiff points to Defendant Steven Grimm's "intimations and insinuations" as a basis for holding Defendant CCSD liable under § 1983, her claim fails.[11] Moreover, although the Board of Education is a final policymaking official under New York law with respect to termination of District employees, Plaintiff has not alleged conduct by the Board sufficient to state a plausible discrimination claim. *See id.* (citing N.Y. Educ. Law § 3012).

Plaintiff alleges that Defendant CCSD is liable because it "participat[ed] and endors[ed] . . . unconstitutional and unlawful customs, policies, and practices," was "aware . . . of the long-standing unlawful customs, policies and practices of the other named Defendants, and

---

[11] Additionally, as discussed above, these "intimations and insinuations" would not be sufficient to infer a gender discriminatory motive.

deliberately and/or negligently failed to take action to correct the unlawful customs, policies and practices . . . ."  *See* Dkt. No. 30 at ¶ 5.  Plaintiff also alleges in a conclusory manner that the Board "endors[ed], allow[ed], and personally engag[ed] in discriminatory bias" without adequately describing how the Board accomplished such endorsement or engagement or allowed such discriminatory bias to exist.  *See id.* at ¶¶ 5, 7, 8, 13-14.  Plaintiff further asserts that the Board was deliberately indifferent to a long-standing policy of gender discrimination shown by the actions of others.  *See id.* at ¶¶ 5, 8, 13-14, 21, 30.  However, these allegations are also couched in conclusory terms that (1) Plaintiff was subjected to discrimination, *see id.* at ¶ 13; (2) the District Defendants established and perpetuated discriminatory "policies, customs, practices and habits of [Defendants] Burdick Bowe, Shaun Carney and Steven Grimm," *see id.* at ¶ 14; (3) the District Defendants failed to "intercede and prevent" the unlawful discriminatory conduct and "knew or should have known" that such actions were unlawful and discriminatory, *see id.*; (4) the District Defendants "knew or should have known that Plaintiff's gender was considered in initiating an investigation and but for her gender she would not have been subjected to such spurious and defamatory allegations," *see id.* at ¶ 21; and (5) the District Defendants "deliberately, recklessly and/or negligently participated in such [discriminatory] acts and/or failed to cease or discourage such practices," *see id.* at ¶ 30.  As previously stated, these allegations are wholly conclusory and formulaic as they do not contain any factual content tending to indicate how the Board Member Defendants were aware of or deliberately indifferent to the "policy or custom," or in what way Defendants CCSD or the Board Member Defendants had a discriminatory "policy or custom."[12]  Additionally, to the extent that Plaintiff seeks to

---

[12] *See Montero v. City of Yonkers, N. Y.*, 890 F.3d 386, 403-04 (2d Cir. 2018) (finding that plaintiff's municipal liability claim failed where his policy or custom claim merely alleged that the defendant acted through its final policymaking officials to aid employees in retaliating

attribute the conduct or "final decisions" of Defendants Steven Grimm, Carney, Fiore, or any of

the remaining non-Board Member individual Defendants to the Board, she still fails to state a

claim because those individual Defendants are not final policymakers for termination purposes.

*See Simpson*, 2007 WL 2789512, at *6 (citing N.Y. Educ. Law § 3012); *Agosto*, 982 F.3d at 101

(stating that, "even when the official [committing the conduct in question] 'is the apex of a

bureaucracy,' that merely 'makes the decision "final" but does not forge a link between "finality"

and "policy."'" (quoting [*Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 427 (2d

Cir. 2004)])).

Finally, Plaintiff seeks to attribute the statements that Defendant Lauchert allegedly made

that "Plaintiff should be in jail and/or prosecuted" and that Plaintiff "engaged in improper or

illegal conduct" to the Board.  *See id.* at ¶ 7.  This argument also fails because Defendant

Lauchert's alleged statements contain insufficient facts to raise an inference of gender

discriminatory motive on the part of the Board because, as currently pled, they do not mention

gender or sexual orientation.  Therefore, the Court finds that Plaintiff has failed to allege facts

showing a policy or custom or that a final policymaker took actions sufficient to state a *Monell*

---

against plaintiff, and in doing so, "adopted an unwritten policy" by "condoning and ratifying" retaliatory actions); *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 588-89 (S.D.N.Y. 2014) (dismissing the plaintiff's *Monell* claim where Department of Education's alleged policy or custom amounted to conclusory allegations of supervisors "fail[ing] to properly investigate and address allegations" of unlawful conduct and "policymakers treating her differently than others similarly situated"); *Houghton v. Cardone*, 295 F. Supp. 2d 268, 278-79 (W.D.N.Y. 2003) (finding the plaintiff's *Monell* claim against the defendant insufficient where the plaintiff merely alleged "conclusory allegations that the county defendants knew about the officers' alleged misconduct, that they failed to properly supervise or train them, and so on" without "a single fact . . . alleged in support of those allegations"); *Moscowitz v. Brown*, 850 F. Supp. 1185, 1198 (S.D.N.Y. 1994), *abrogated on other grounds by Lautore v. Int'l Bus. Machs. Corp.*, 216 F.3d 258 (2d Cir. 2000) (dismissing the plaintiff's equal protection claim because he alleged in a conclusory manner that the defendants had "'a policy, practice, custom or usage of discriminating against the plaintiff'" without any allegations specifying what the Board of Education's policy or practice was, other than that the Board terminated the plaintiff).

claim against Defendant CCSD.  As a result, the Court grants the District Defendants' motion to dismiss Plaintiff's § 1983 *Monell* claim based on gender discrimination against Defendant CCSD without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert this claim against Defendant CCSD.

### b.  *Hostile work environment claim*

As discussed above, Plaintiff has failed to state a hostile work environment claim against any of the individual Defendants.  As a result, the Court finds that her § 1983 *Monell* claim against Defendant CCSD based on a hostile work environment fails as well.  Alternatively, even assuming *arguendo* that Plaintiff had stated a hostile work environment claim against the individual Defendants, the Court still concludes that her claim against Defendant CCSD fails because she has failed to allege, in a nonconclusory manner, that the hostile work environment occurred as a result of a policy or custom of Defendant CCSD.  Her hostile work environment claim mainly relies on (1) "intimations and insinuations" that she had sexual or romantic interest in her student, KS, *see* Dkt. No. 30 at ¶ 8; (2) the previously discussed "excessive scrutiny" to which the District Defendants subjected her, *see id.* at ¶ 18; (3) that Defendants Steven Grimm and Miquel Grimm "actively undermined" her and made false representations and assertions about her before Board members, *see id.* at ¶ 20; and (4) Defendant Lauchert's alleged statement that Plaintiff should be in jail or prosecuted for improper or illegal conduct, *see id.* at ¶ 7.  These allegations fail to state anything that, if true, would show Defendant CCSD had a policy or custom of permitting a hostile work environment or that the Board was deliberately indifferent to a hostile work environment.  Moreover, to the extent that Plaintiff wishes to rely on the plain "knew or should have known" and "deliberate indifference" statements discussed in the previous

section analyzing Plaintiff's *Monell* gender discrimination claim, those statements are nothing more than conclusory assertions of policy, custom, or deliberate indifference and similarly fail. *See id.* at ¶¶ 13-14, 21, 30.

Therefore, the Court grants the District Defendants' motion to dismiss Plaintiff's § 1983 *Monell* claim based on a hostile work environment against Defendant CCSD without prejudice and grants Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert this claim against Defendant CCSD.

### F.  Plaintiff's Fourteenth Amendment Due Process claim

Plaintiff alleges a stigma-plus due process claim against the District Defendants under the Fourteenth Amendment based on their alleged failure to provide her with a name clearing hearing after making allegedly defamatory statements about her and terminating her employment the following month.  To plead a Fourteenth Amendment "stigma-plus" claim, a plaintiff must allege (1) that the defendant(s) made a false statement about her that injured her reputation and is capable of being proven false, and (2) that she also suffered a "'tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'"  *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds, Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003)).  The complained-of statement "must be sufficiently public to create or threaten a stigma," *id.* at 87; and it must have occurred "in close temporal relationship to" the state-imposed burden, *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (citations omitted).  Where an individual suffers a "stigma-plus" liberty deprivation, she must be given an opportunity to refute the alleged false statement and clear her name.  *See Mullahey v. Zurlo*, No.

1:16-CV-00401 (MAD/DJS), 2017 WL 530523, *4 (N.D.N.Y. Feb. 9, 2017).  The Second
Circuit and district courts in New York have repeatedly held that the availability of an Article 78
name-clearing proceeding to a former at-will government employee alleging a stigma-plus claim
is all that is necessary to satisfy due process even if the plaintiff does not ultimately utilize such a
proceeding.  *See id.* at *5-*6; *Hughes v. City of New York*, 680 F. App'x 8, 10 (2d Cir. 2017)
(summary order); *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011).

Plaintiff alleges that, in or about May 2018, Defendant Lauchert (1) stated that "Plaintiff
had engaged in criminal or other unlawful or unprofessional acts," (2) stated that "Plaintiff
should be in jail and/or prosecuted," and (3) suggested that "Plaintiff had engaged in improper or
illegal conduct" to individuals "both inside and outside the district."  *See* Dkt. No. 30 at ¶ 7.
Accepting as true Plaintiff's allegations that Defendant Lauchert made these statements, those
statements would likely be damaging to Plaintiff's reputation.  Furthermore, Defendant
Lauchert's alleged statements could possibly be proven false upon ascertaining what the unlawful
acts were that Plaintiff allegedly committed.  Therefore, the Court finds that Plaintiff has
sufficiently pled the first element of her stigma-plus claim.

Additionally, Plaintiff has alleged that the District Defendants terminated her the month
after Defendant Lauchert made the alleged statements.  *See id.* at ¶¶ 4, 7.  Although it is unclear
when in May 2018 Defendant Lauchert made these statements, it seems that Plaintiff's
termination, which occurred the following month, is sufficiently close in time to the statements
to satisfy this element of her claim.  Thus, the Court finds that Plaintiff has sufficiently pled the
second element of her stigma-plus claim and that the alleged termination and statements were
sufficiently close in time to each other.

Plaintiff further alleges that Defendant Lauchert made these "comments and statements" to individuals "both inside and outside the district in or about May 2018." *See id.* at ¶ 7. Based on these facts, it is unclear how public Defendant Lauchert made the allegedly defamatory statements, if at all. Plaintiff is correct that placement of statements in an employee's personnel file is capable of satisfying the "contemporaneous public disclosure" element of a stigma-plus claim. S*ee Segal*, 459 F.3d at 213 (citation omitted). However, Plaintiff fails to allege in her amended complaint that the complained of defamatory statements were ever put in her personnel file. *See* Dkt. No. 40 at 10. Therefore, the Court finds that Plaintiff has not sufficiently pled that Defendant Lauchert's statements were sufficiently public to satisfy this element of her stigma-plus claim.

Finally, even assuming *arguendo* that Plaintiff had sufficiently alleged the elements of a stigma-plus claim, the Court finds that Plaintiff fails to state a claim upon which relief can be granted because she could have used an Article 78 proceeding to clear her name and did not do so. Since Plaintiff was an at-will employee, *see* Dkt. No. 30 at ¶ 13; Dkt. No. 35-2 at 19, and a name-clearing hearing was available to her under Article 78, the District Defendants did not deprive her of due process; and, thus, her stigma-plus claim fails. Accordingly, the Court grants the District Defendants' motion to dismiss Plaintiff's Fourteenth Amendment stigma-plus claim against them with prejudice.

## III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the District Defendants' motion to dismiss Plaintiff's Title VII and Title IX claims against the individual District Defendants is **DENIED as moot because Plaintiff confirms that she has not pled those claims against the individual District Defendants**; and the Court further

**ORDERS** that the District Defendants' motion to dismiss Plaintiff's Fourteenth Amendment Due Process claim against them brought pursuant to 42 U.S.C. § 1983 is **GRANTED**; and Plaintiff's Fourteenth Amendment Due Process claim against the District Defendants is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the District Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against them brought pursuant to 42 U.S.C. § 1983 is **GRANTED** and Plaintiff's First Amendment retaliation claim against the District Defendants is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the District Defendants' motion to dismiss Plaintiff's Title VII and Title IX claims against Defendant CCSD based on gender/sexual orientation, hostile work environment, and retaliation is **GRANTED** and Plaintiff's Title VII and Title IX claims against Defendant CCSD based on gender/sexual orientation, hostile work environment, and retaliation are **DISMISSED without prejudice**; and the Court further

**ORDERS** that the District Defendants' motion to dismiss Plaintiff's malicious prosecution claim against the individual District Defendants is **GRANTED** and Plaintiff's malicious prosecution claim brought pursuant to 42 U.S.C. § 1983 is **DISMISSED without prejudice as to Defendants Steven Grimm, Miquel Grimm, Mary Lou Lauchert, Timothy Thomas, Megan Burdick, Luke Perry, Erica Shaw, Shaun Carney, and Douglas Fiore** and ***with prejudice as to Defendants Amy Franz and Courtney Zoller***; and the Court further

**ORDERS** that the District Defendants' motion to dismiss Plaintiff's Equal Protection claims based on gender/sexual orientation discrimination and hostile work environment brought pursuant to 42 U.S.C. § 1983 against the individual District Defendants Steven Grimm, Miquel Grimm, Mary Lou Lauchert, Timothy Thomas, Megan Burdick, Amy Franz, Luke Perry, Erica Shaw, Courtney Zoller, Shaun Carney and Douglas Fiore is **GRANTED** and Plaintiff's Equal Protection claim against these individual District Defendants is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the District Defendants' motion to dismiss Plaintiff's Equal Protection claims for gender/sexual orientation discrimination and hostile work environment brought pursuant to 42 U.S.C. § 1983 and *Monell* against Defendant Clinton Central School District is **GRANTED** and this claim against Defendant Clinton Central School District is **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's request for the opportunity to file a motion seeking leave to amend her amended complaint to assert those claims listed above, which the Court has **dismissed without prejudice**, is **GRANTED**; and Plaintiff must file any such motion **within twenty (20) days** of the filing of this Memorandum-Decision and Order; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Baxter for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 4, 2021
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge