**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**MARISSA RYS,** *a/k/a* **MARISSA TREEN,**

                                            **Plaintiff,**

            **v.**                                              **6:19-CV-1251**
                                                                **(FJS/ATB)**
**CLINTON CENTRAL SCHOOL DISTRICT;**
**MELINDA BURDICK BOWE,** *Attorney,*
*Clinton Central School District***; and ELIZABETH**
**HOFFMAN,** *Attorney, Clinton Central School*
*District***,**


                                            **Defendants.**

_____

**APPEARANCES**                              **OF COUNSEL**

**BOSMAN LAW FIRM, LLC**                     **A.J. BOSMAN, ESQ.**
3000 McConnellsville Road                    **ROBERT J. STRUM, ESQ.**
Blossvale, New York 13308
Attorneys for Plaintiffs

**FERRARA FIORENZA P.C.**                    **CHARLES C. SPAGNOLI, ESQ.**
5010 Campuswood Drive
East Syracuse, New York 13057
Attorneys for Defendant
Clinton Central School District

**COSTELLO, COONEY & FEARON, PLLC**          **PAUL G. FERRARA, ESQ.**
211 West Jefferson Street
Syracuse, New York 13202
Attorneys for Defendants Melinda Burdick Bowe
and Elizabeth Hoffman


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION AND BACKGROUND**

Plaintiff, a former middle school teacher and high school coach at Defendant Clinton Central School District ("Defendant CCSD"), commenced this action in October 2019, alleging, among other things, that she was discriminated against, suffered a hostile work environment, and was terminated after false allegations surfaced that she had romantic or sexual feelings for one of the students she coached, "K.S." *See generally* Dkt. No. 1. In addition to suing Defendant CCSD, Plaintiff also named various members of Defendant CCSD's faculty, including the superintendent, another coach, the athletic director, the middle school principal, and Defendant CCSD's board members (hereinafter collectively referred to as the "Individual Defendants"), and two attorneys for Defendant CCSD, Ms. Melinda Burdick Bowe, Esq. and Ms. Elizabeth Hoffman, Esq. (collectively referred to as the "Attorney Defendants"). *See generally id.*

Plaintiff first amended her complaint as of right in December 2019 (hereinafter the "FAC"). *See* Dkt. No. 30. Defendant CCSD and the Individual Defendants moved to dismiss the FAC for failure to state a claim,[1] which the Court granted in part and denied in part, determining that Plaintiff's Title VII and Title IX claims against Defendant CCSD for gender discrimination could go forward and dismissing the remaining claims, including those against the Individual Defendants. *See* Dkt. Nos. 35, 43, 58. Plaintiff then moved to amend her complaint and attached a Proposed Second Amended Complaint ("PSAC") to that motion. *See* Dkt. No. 44. The Court granted Plaintiff leave to amend her FAC with respect to her Title VII and Title IX gender discrimination claims against Defendant CCSD but denied her request with

---

[1] The Attorney Defendants did not move to dismiss Plaintiff's FAC at that time.

respect to her other claims.  *See* Dkt. No. 58.  Specifically, the Court ordered "that Plaintiff shall file a Second Amended Complaint [(hereinafter the "SAC")] that only contains her Title VII and Title IX claims for gender discrimination against Defendant CCSD and her claims against the Non-District Defendants [the Attorney Defendants], who have not moved to dismiss those claims, *within fourteen (14) days* of the filing of [the Court's] Memorandum-Decision and Order."  *See id.* at 30.  The Court also reminded Plaintiff to "specifically identify against which Defendants she is asserting each of her claims[.]"  *See id.*

Plaintiff filed her SAC in August 2021, which contained nearly identical allegations to her PSAC but only alleged the following four causes of action: (1) Title VII gender discrimination against Defendant CCSD; (2) Title IX gender discrimination against Defendant CCSD; (3) gender discrimination under 42 U.S.C. § 1983 against the Attorney Defendants; and (4) hostile work environment based on gender and perceived sexual orientation under 42 U.S.C. § 1983 against the Attorney Defendants.  *See* Dkt. No. 60 at ¶¶ 56-67.  Pending before the Court are Defendant CCSD's motion to strike Plaintiff's SAC for failing to comport with the Court's Order, *see* Dkt. No. 63, and the Attorney Defendants' motion to dismiss Plaintiff's two causes of action against them for failure to state a claim, *see* Dkt. No. 68.  Plaintiff opposes both motions. *See* Dkt. Nos. 69, 71.

## II. DISCUSSION

### A.  Defendant CCSD's motion to strike Plaintiff's SAC

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike "'may be appropriate where a plaintiff has exceeded the scope of h[er] leave to amend.'"  *Starostenko v. UBS AG*, No. 19 Civ. 9993 (KPF),

2022 U.S. Dist. LEXIS 65164, *5 (S.D.N.Y. Apr. 7, 2022) (quoting *Miles v. City of New York*, No. 14 Civ. 9302 (VSB), 2018 U.S. Dist. LEXIS 130914, 2018 WL 3708657, at *5 (S.D.N.Y. Aug. 3, 2018)) (other citation omitted).  "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases).  However, "'[a] motion to strike is not favored and will not be granted unless it is clear that the allegation in question can have no possible bearing on the subject matter of the litigation.'" *Knight v. Cnty. of Cayuga*, No. 5:19-CV-712, 2019 U.S. Dist. LEXIS 175238, *45 (N.D.N.Y. Oct. 9, 2019) (Hurd, J.) (quoting *Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 65 (N.D.N.Y. 2008) (internal citations and quotation marks omitted)).

    In Plaintiff's PSAC, filed in March 2021, she sought to add various allegations related to her communications with Defendant CCSD's employees regarding her alleged "relationship" with K.S. to her complaint.  *See* Dkt. No. 44-2, PSAC, at ¶¶ 38-55.  Plaintiff also included a cause of action pursuant to 42 U.S.C. § 1983 against Defendant CCSD for retaliation.  *See id.* at ¶¶ 89-91.  As stated above, in its August 12, 2021 Memorandum-Decision and Order, the Court granted Plaintiff's motion for leave to amend her FAC "as to her Title VII and Title IX claims for gender discrimination against Defendant CCSD[.]"  *See* Dkt. No. 58 at 29.  Following the Court's directive, Plaintiff submitted her SAC, in which she included four causes of action against Defendant CCSD and the Attorney Defendants.  *See* Dkt. No. 60 at ¶¶ 56-67.  She also included all of the allegations in paragraphs 38 through 55 as listed in her PSAC.  *Compare* Dkt. No. 44-2 *with* Dkt. No. 60.

More specifically, Plaintiff alleged that, on October 31, 2017, the middle school principal, Mr. Shaun Carney, emailed her, inquiring about her availability to talk, and when Plaintiff answered, questioning the subject matter of the meeting, Mr. Carney did not respond. *See* Dkt. No. 60 at ¶ 39.  In a subsequent meeting with Mr. Carney, he allegedly questioned Plaintiff about her "relationship" with K.S. and indicated that there was "chatter in the community" about their relationship because "K.S. is openly gay" and Plaintiff "kn[e]w where [he was] going with" their conversation.  *See id.* at ¶ 40.  After Plaintiff left Mr. Carney's office, he allegedly emailed her asking when they could meet again.  *See id.* at ¶ 42.  Mr. Carney met with Plaintiff again at another time, in the presence of her union representative and the middle school building representative, in which Mr. Carney informed Plaintiff that "people in the community were complaining that Plaintiff and K.S. were spending time together."  *See id.* at ¶ 43.  Throughout the meeting, Mr. Carney allegedly brought up the fact that K.S. was "openly gay" and that they would "not be having this conversation" if K.S. were not gay, or if people saw Plaintiff with other students who were not openly gay.  *See id.*  Mr. Carney allegedly also told Plaintiff that it was "a good thing" that she was engaged to be married to a man.  *See id.*

Plaintiff alleged that, on November 15, 2017, Mr. Carney sent her an email directly – and to no other teachers – in which he advised her that no high school students were permitted to visit middle school classrooms.  *See id.* at ¶ 44.  According to Plaintiff, she stated she would comply as long as other teachers were expected to do the same and that, when she protested "disparate treatment" on December 20, 2017, Mr. Carney communicated the policy to the other teachers.  *See id.*  Plaintiff further alleged that male coaches "routinely had contact with students both on and off school grounds," including driving students home or having them over

to their houses, "but such behavior had never attracted scrutiny by supervisors at [Defendant CCSD]." *See id.* at ¶ 45.

Plaintiff also pointed to various incidents that happened during the 2017-2018 school year, including one instance when Mr. Carney observed Plaintiff and K.S. walking into the school from the parking lot and then requested video footage of the parking lot to review their interactions together. *See id.* at ¶ 46. Plaintiff also alleged that, on April 3, 2018, her union representative informed her that she was not to report to work the next day, which had been relayed to him by the superintendent. *See id.* at ¶ 48. Specifically, the representative reported to Plaintiff that she was "being accused of having romantic feelings for the student," K.S. *See id.*

Plaintiff alleged that, the next day, she learned that some of Defendant CCSD's employees had made reports against her regarding K.S. and falsely portrayed to the superintendent that "something nefarious" happened while she was sitting next to K.S. during a game. *See id.* at ¶ 49. Plaintiff also alleged that she met with the superintendent, her union representative, and the Attorney Defendants, who asked Plaintiff if she had ever been in a relationship with a woman, if she had ever kissed a woman, and about her sexual orientation and intimate relationships. *See id.* at ¶¶ 50-51.

When the Court concluded that Plaintiff had stated a claim against Defendant CCSD for discrimination based on gender or sexual orientation pursuant to Title VII and Title IX, the Court considered that Defendant CCSD terminated Plaintiff's employment """under circumstances giving rise to an inference of discriminatory intent.""" *See* Dkt. No. 58 at 10 (quoting *Bowan v. N.Y. State Hous. & Cmty. Renewal*, No. 18 Civ. 11596 (ER), 2020 WL 6505291, *3 (S.D.N.Y. Nov. 5, 2020) (quotation and other citation omitted)). The Court noted

that, to illustrate those circumstances, Plaintiff alleged her various meetings with Mr. Carney, in which he informed her that there was community "chatter" about her relationship with K.S., that K.S. was openly gay, that the meeting would not have taken place if the complaints did not involve an openly gay student, and that it was a good thing that Plaintiff was engaged to marry a man. *See id.* at 11 (citing Dkt. No. 44-2 at ¶¶ 40, 43, 48). The Court also pointed to Plaintiff's allegations that she had meetings with the superintendent and the Attorney Defendants who asked her about her relationships with women and discussed kissing women. *See id.* (citing Dkt. No. 44-2 at ¶¶ 50-51). The Court found that those allegations stated plausible Title VII and IX gender discrimination claims against Defendant CCSD. *See id.* at 12.

For the same reasons, the Court now finds that the allegations in paragraphs 38 through 55 of Plaintiff's SAC – which are identical to those the Court considered in the PSAC – support Plaintiff's allegations of discrimination based on gender or sexual orientation under Title VII and Title IX against Defendant CCSD. Furthermore, as discussed above, Plaintiff did not add any factual allegations beyond what was included in the PSAC, and she only alleged the two causes of action against Defendant CCSD that the Court permitted her to allege. As such, the Court finds that Plaintiff complied with the Court's grant of leave to file her SAC, and her SAC does not include factual allegations that are irrelevant or immaterial to her claims. The Court therefore denies Defendant CCSD's motion to strike Plaintiff's SAC in its entirety.

### B. Attorney Defendants' motion to dismiss[2]

The Attorney Defendants contend that Plaintiff's claims against them fail because attorneys, including government attorneys, performing the traditional functions of counsel for

---

[2] Defendant CCSD submitted a letter to the Court supporting the Attorney Defendants' motion. *See* Dkt. No. 69.

their clients cannot be liable under 42 U.S.C. § 1983 as a matter of law.  *See* Dkt. No. 68-4 at 4.

Although the parties agree that there is an exception when the attorneys are acting as

investigators, the Attorney Defendants assert that they were not acting as investigators pursuant

to their agreement with Defendant CCSD.  *See id.* at 7.  To support this argument, the Attorney

Defendants rely on both Plaintiff's 50-h testimony and Defendant Hoffman's affidavit, *See id.* at

6-7.  The Attorney Defendants also argue that Plaintiff never specifically identifies in the SAC

what discrete act or acts they allegedly took as purported "investigators" to violate her rights.

*See id.* at 8.

Plaintiff responds that the Court cannot consider her 50-h testimony or Defendant

Hoffman's affidavit as they are outside the four corners of her complaint.  *See* Dkt. No. 77 at 4.

Plaintiff further argues that the Attorney Defendants were "'willful participant[s] in joint activity

with the State.'"  *See id.* at 6 (quoting *Brentwood Academy v. Tenn. Secondary Sch. Athletic

Assoc.*, 531 U.S. 288, 295 (2001)) (other citations omitted).  Thus, she asserts, the Attorney

Defendants' "joint activity" with Defendant CCSD "supplies the basis to maintain a § 1983

claim against them."  *See id.*

In determining whether to grant the Attorney Defendants' motion to dismiss, the Court

must decide the following: (1) whether to consider Plaintiff's 50-h testimony and Defendant

Hoffman's affidavit; (2) whether the Attorney Defendants are "state actors" and, thus, are

subject to liability under 42 U.S.C. § 1983; and (3) if they are not "state actors," whether the

Attorney Defendants can otherwise be held liable under 42 U.S.C. § 1983 because they acted

outside of their traditional roles as attorneys or acted in concert with Defendant CCSD to

commit unconstitutional acts.

### 1. *Motion to dismiss standard*

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *LMC Indus. Contractors, Inc. v. Dominion Energy Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3 (N.D.N.Y. Aug. 24, 2021) (Scullin, S.J.) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)).  However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929).  Therefore, under this standard, a plaintiff must support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged [her] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint.  *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

### 2. *Admissibility of evidence outside the four corners of the complaint*

As an initial matter, the parties dispute whether, in considering the Attorney Defendants' motion to dismiss, the Court should consider Plaintiff's testimony at her GML § 50-h hearing. "[T]he great weight of authority on this issue establishes that courts generally may not consider

50-h examination transcripts" in deciding a motion to dismiss "because they fall outside the four corners of the complaint." *Gurrieri v. Cnty. of Nassau*, No. 2:16-cv-6983 (ADS)(SIL), 2018 U.S. Dist. LEXIS 211204, *11-*12 (E.D.N.Y. Dec. 14, 2018) (collecting cases); *see J.H. v. City of Mt. Vernon*, No. 18-CV-4399 (CS), 2019 U.S. Dist. LEXIS 64692, *8 (S.D.N.Y. Apr. 15, 2019) (finding that "'[c]ourts in this circuit typically decline to consider 50-h testimony submitted by defendants when ruling on a Rule 12(b)(6) motion'" (quotation and other citation omitted)); *Shaw v. Rondout Valley Cent. Sch. Dist.*, No. 1:15-cv-00215 (MAD/TWD), 2015 U.S. Dist. LEXIS 165415, *11 (N.D.N.Y. Dec. 10, 2015) (D'Agostino, J.) (declining to consider a GML § 50-h hearing transcript on a motion to dismiss to the extent that it contained additional facts not alleged in the complaint (citation omitted)); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 273 (W.D.N.Y. 2014) (noting that, "[g]enerally speaking, a transcript from a 50-h hearing will be considered outside the four corners of the complaint" (collecting cases)). Plaintiff does not rely on her GML § 50-h hearing testimony or cite to the transcript anywhere within her SAC; and, following the precedent that courts in this Circuit have set, the Court declines to consider Plaintiff's testimony from the GML § 50-h hearing in determining the Attorney Defendants' motion to dismiss. *See Oper v. Capital Dist. Reg'l Off-Track Betting Corp.*, No. 1:20-CV-1415 (FJS/CFH), 2021 U.S. Dist. LEXIS 243846, *5 (N.D.N.Y. Dec. 22, 2021) (Scullin, S.J.).

The parties also dispute whether the Court should consider Defendant Hoffman's affidavit in which she allegedly avers that Defendant CCSD retained her and Defendant Bowe as outside counsel. The Attorney Defendants claim that the Court should take judicial notice of this fact as asserted in Defendant Hoffman's affidavit pursuant to Federal Rule of Evidence 201. That rule provides that "[t]he court may judicially notice a fact that is not subject to reasonable

dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). However, courts in this Circuit have declined to take judicial notice of an attorney affirmation when parties have sought to establish the truth of the facts asserted therein. *See 30 Thompson AW Holdings, LLC v. Kovacs (In re Kovacs)*, No. 8-18-75875-las, 2021 Bankr. LEXIS 1094, *9 n.8 (Bankr. E.D.N.Y. Apr. 23, 2021) (citation omitted).

In this case, as discussed below, the parties do not dispute that Defendants Bowe and Hoffman are attorneys, but Plaintiff claims that they were acting as *investigators* in addition to acting as attorneys for Defendant CCSD, thus making them subject to liability pursuant to 42 U.S.C. § 1983. Whether Defendant CCSD retained the Attorney Defendants as attorneys or investigators is therefore in dispute and is not an appropriate subject of which the Court can take judicial notice. Accordingly, the Court declines to take judicial notice of Defendant Hoffman's affidavit in which she avers that Defendant CCSD retained her and Defendant Bowe as counsel.

### 3. *Whether the Attorney Defendants can be held liable as "state actors" under 42 U.S.C. § 1983*

"'[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.'" *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992)). The Second Circuit has therefore held that "'[a] plaintiff pressing a claim of violation of his constitutional rights under § 1983 is . . . required to show state action.'" *Id.* (quoting

*Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)).  "Private attorneys are generally not 'state actors' for purposes of § 1983." *O'Donoghue v. United States SSA*, 828 F. App'x 784, 787 (2d Cir. 2020) (summary order) (citing, *e.g.*, *Rodriguez v. Weprin*, 116 F.3d 64, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act under color of state law and therefore are not subject to suit under 42 U.S.C. § 1983.")).  "[T]he mere fact that [a private attorney] represented a public entity does not convert him [or her] into a state actor who may be held liable under Section 1983." *A.S. v. City Sch. Dist. of Albany*, No. 1:21-cv-620 (BKS/ATB), 2022 U.S. Dist. LEXIS 21693, *81 (N.D.N.Y. Feb. 7, 2022) (Sannes, J.) (citing *Shaw v. Rondout Valley Cent. Sch. Dist.*, No. 15-cv-215, 2015 U.S. Dist. LEXIS 1645415, at *20-21, 2015 WL 8492487, at *7 (N.D.N.Y. Dec. 10, 2015) [(D'Agostino, J.)] (parenthetical omitted)) (other citation omitted).  "To state a Section 1983 claim against a private entity, the plaintiff must show that: (1) 'the entity acts pursuant to the coercive power of the state or is controlled by the state'; (2) 'the state provides significant encouragement to the entity,' and 'the entity is [either] a willful participant in joint activity with the state or the entity's functions are entwined with state policies'; or (3) 'the entity has been delegated a public function by the state.'" *Vaughn v. Phoenix House N.Y., Inc.*, 957 F.3d 141, 147 (2d Cir. 2020) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (internal quotation marks and alterations omitted)).

Put another way, to state a § 1983 claim against a private entity based on a conspiracy theory, "'the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear*, 954 F.3d at 68).  "Conclusory allegations that a

private individual conspired or took concerted action with state actors will not suffice." *Watson v. Grady*, No. 09-CV-3055 (KMK), 2010 U.S. Dist. LEXIS 103473, *27 (S.D.N.Y. Sept. 30, 2010) (citations omitted).  "Rather, a plaintiff must allege 'a sufficiently close nexus between the State and the challenged action of the private party so that the action of the latter may be fairly treated as that of the State itself, or [that] [the private actor] [was] jointly engaged with state officials in a conspiracy to deprive the plaintiff of his constitutional rights.'" *Id.* (quoting *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 664-65 (2d Cir. 2009) (summary order) (internal quotation marks, citations, and brackets omitted)) (other citations omitted).  The parties do not dispute that Defendants Bowe and Hoffman are private attorneys; and, therefore, the Court finds that they are not subject to liability pursuant to § 1983 unless they acted (1) outside of their traditional roles as attorneys, or (2) in concert with Defendant CCSD to commit unconstitutional acts.  The Court addresses these issues in turn.

Generally, in her SAC, Plaintiff alleges that the Attorney Defendants "were recruited and retained by" Defendant CCSD "purportedly to supervise the 'investigation' of allegations of impropriety by Plaintiff and as such had a duty to professionally, fairly, and completely investigate allegations against Plaintiff in an unbiased manner."  *See* Dkt. No. 60 at ¶ 11. Instead, Plaintiff alleges, they "conducted an inaccurate and incomplete investigation," provided a false report, failed to alert Defendant CCSD that neither Defendant Bowe nor Defendant Hoffman had investigative experience, failed to interview witnesses or gather evidence, and engaged in discriminatory conduct personally against Plaintiff.  *See id.*  Plaintiff further alleges that the Attorney Defendants engaged in "sexual stereotyping" when they asked Plaintiff about her sexual orientation and if she ever "kissed a woman."  *See id.*  She alleges that the Attorney Defendants endorsed Defendant CCSD's actions and beliefs that Plaintiff should have treated

- 13 -

K.S. differently from other student athletes, insinuated that Plaintiff had romantic or sexual interest in K.S., failed to advise Defendant CCSD that Plaintiff's actions were consistent with coaching policies and practices, and failed to alert Plaintiff that she would be further subjected to such bias and defamation because of the student's and her perceived sexual orientations.  *See id.*

Plaintiff also alleges that, on April 16, 2018, she met with the Attorney Defendants who "asked whether she had ever been in a relationship with a woman or had ever kissed a woman." *See id.* at ¶ 51.  According to Plaintiff, the Attorney Defendants questioned her "about her sexual orientation and her intimate relationships," focusing primarily on Plaintiff's relationships with women.  *See id.*  Plaintiff alleges that the experience was "humiliating and a gross violation of [her] privacy."  *See id.*

In her third cause of action, Plaintiff alleges that the Attorney Defendants "discriminated against and disparately treated [her]" based on her gender, sexual stereotyping, sexual orientation, or perceived sexual orientation, in violation of the Fourteenth Amendment.  *See id.* at ¶¶ 62-64.  In her fourth cause of action, Plaintiff alleges that the Attorney Defendants "subjected [her] to a hostile work environment" based on her gender, sexual stereotyping, sexual orientation, or perceived sexual orientation.  *See id.* at ¶¶ 65-67.

To support her contention that the Attorney Defendants were not acting within their traditional roles as attorneys, Plaintiff claims that Defendant CCSD hired the Attorney Defendants to "investigate" allegations of Plaintiff's romantic or sexual interest in a female student.  However, attorneys traditionally investigate information on behalf of their clients, which may include interviewing witnesses about relevant subject matter without becoming "investigators" such that they would be subject to liability.  *Cf. Borisova v. Friberg*, No. 18-CV-

7440 (AMD) (SJB), 2020 U.S. Dist. LEXIS 176935, *7-*9 (E.D.N.Y. Sept. 25, 2020).  In fact, the Federal Rules of Civil Procedure require that attorneys make "an inquiry reasonable under the circumstances" before presenting any pleading, written motion, or other paper to the Court. Fed. R. Civ. P. 11(b).  The Court therefore finds that the Attorney Defendants were acting within their traditional roles as attorneys when they interviewed Plaintiff and asked about her sexual orientation and history to help determine whether the allegations against Plaintiff were true and how to respond to Plaintiff's complaints.  Accordingly, the Court finds that the Attorney Defendants are not subject to liability pursuant to 42 U.S.C. § 1983 for their "investigative" conduct.

The Court further finds that Plaintiff has not alleged that the Attorney Defendants were "willful participants in joint activity with the State" and that there was a "close nexus" between the Attorney Defendants and Defendant CCSD such that they acted as the State.  In her SAC, Plaintiff merely alleges that Defendant CCSD "recruited and retained" the Attorney Defendants to "investigate allegations against Plaintiff in an unbiased manner." *See* Dkt. No. 60 at ¶ 11.  As discussed above, the Attorney Defendants did not act in concert with the State simply because they were in positions as attorneys in private practice who were retained by a school district. *See A.S.*, 2022 U.S. Dist. LEXIS 21693, at *79-*81; *Shaw v. Rondout Valley Cent. Sch. Dist.*, No. 1:15-cv-215 (MAD/TWD), 2015 U.S. Dist. LEXIS 165415, *20 (N.D.N.Y. Dec. 10, 2015) (D'Agostino, J.).  Plaintiff's SAC also only generally references that retainer agreement, and she has failed to plausibly allege any other facts to show a conspiracy between the parties that would establish that the Attorney Defendants acted as the State.  *See Shaw*, 2015 U.S. Dist. LEXIS 165415, at *20-*21.

- 15 -

In any event, even if Plaintiff had alleged that "close nexus" between the Attorney Defendants and Defendant CCSD, the Court finds that Plaintiff has also failed to allege in anything other than conclusory terms how the Attorney Defendants acted with Defendant CCSD to commit "unconstitutional acts."  Plaintiff merely claims that the Attorney Defendants were in charge of investigating her allegedly improper relationship with a female student and that they met on one occasion as part of that investigation and asked Plaintiff questions about her sexual orientation and whether she had ever "kissed a woman."  Even assuming that these allegations are true – as the Court must at the motion to dismiss stage of litigation – the Court finds that they do not rise to the level of severity that creates a hostile work environment, nor would a reasonable person find such questions in response to an inquiry about an alleged inappropriate teacher-student relationship to be "'hostile or abusive.'"  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001) (internal citations and punctuation omitted)).  The Court further finds that Plaintiff has failed to sufficiently allege facts that the Attorney Defendants discriminated against her because of her gender or perceived sexual orientation or that a discriminatory motive could be inferred from the fact that the Attorney Defendants asked Plaintiff questions about her sexuality as part of their investigation into alleged misconduct.  Therefore, the Court finds that the Attorney Defendants did not act as state actors and are not liable under § 1983.  Accordingly, the Court grants the Attorney Defendants' motion to dismiss Plaintiff's third and fourth causes of action against them.

## III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

ORDERS that Defendant CCSD's motion to strike Plaintiff's second-amended complaint, *see* Dkt. No. 63, is **DENIED**; and the Court further

ORDERS that the Attorney Defendants' motion to dismiss Plaintiff's claims against them, *see* Dkt. No. 68, is **GRANTED**; and the Court further

ORDERS that this matter is referred to Magistrate Judge Baxter for all further pretrial matters.

**IT IS SO ORDERED.**

Dated:  May 16, 2022
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

- 17 -