# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

Marissa Rys,

                                        Plaintiff,

          v.                                      6:19-CV-1251
                                                  (FJS/MJK)


Clinton Central School District,

                                        Defendant.

_____

A.J. Bosman, Esq., for Plaintiff
Charles C. Spagnoli, Esq. for Defendants
Paul G. Ferrara, Esq. for Non-party witnesses

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM-DECISION & ORDER

Before the Court is Rys's motion to compel the non-party

witnesses, Elizabeth Hoffman and Melinda Bowe, to answer certain

questions that were asked during their depositions. (Pl. Mot. to Compel,

Dkt. 219). Rys also seeks attorney's fees and expenses associated with

the motion in accordance with Federal Rule of Civil Procedure

37(a)(5)(A). The School District and non-party witnesses oppose the

motion. (Def. Memo of Law, Dkt. 221; Witnesses Memo of Law, Dkt.

223). Rys replied to both opposition papers. (Pl. Reply Brs. Dkts. 225,

226). Below, the Court (1) reviews the tortured history of this six-year-

old case, (2) evaluates Bosman and Ferrara's stunning behavior, (3) decides what questions should have been answered at the deposition, (4) rules on whether it is appropriate for Bosman to re-depose both witnesses, and (5) sanctions Bosman and Ferrara.

\* \* \*

## TABLE OF CONTENTS

I.   BACKGROUND ..................................................................... 3

  A.  The Parties ...................................................................... 3

  B.  The Underlying Case ...................................................... 3

  C.  Procedural History .......................................................... 5

II.  LEGAL FRAMEWORK ....................................................... 8

III. DISCUSSION ....................................................................... 9

  A.  The Deposition Objections ............................................ 10

    1.   This Court's Prior Order on Work Product ............... 10

    2.   Attorney-Client Privilege. .......................................... 17

    3.   Expert Opinion ............................................................ 27

    4.   Impeachment Evidence ............................................... 36

    5.   Remaining Challenges ................................................ 41

  B.  Re-deposing Bowe and Hoffman[1] .............................. 49

  C.  Sanctions ....................................................................... 53

IV. CONCLUSION .................................................................... 62

\* \* \*

---

[1] The Court includes a compilation of the questions that the witnesses should have answered in Section B on pages 50-51.

I.    BACKGROUND

A. The Parties

During the time period that gave rise to this case, Bowe and
Hoffman were lawyers at Costello, Cooney, & Fearon, PLLC. At that
time, Bowe was a partner, and Hoffman was an associate in the
litigation practice. (Hoffman Deposition, Dkt. 207-1, pg. 27, at lns. 15-
16; pg. 32, at lns. 20-21). Since then, Hoffman has become a partner at
Costello, Bowe has left Costello, and Costello sued Bowe in state court
over a financial issue which has been settled. (Hoffman Deposition, Dkt.
207-1, pg. 27, at lns. 3-10); (Bowe Deposition, Dkt. 207-2, pg. 18, at lns.
10-12; pg. 23-24, at lns. 19-12; pg. 15, at lns. 3-7). At the depositions,
Ferrara, who is a lawyer at Costello, represented Hoffman and Bowe.
(Bowe Deposition, Dkt. 207-2, pg. 2).

B. The Underlying Case

At some point in time, a person alleged to Clinton Central School
District that Rys and a student, K.S., had an inappropriate teacher-
student relationship. (Bowe Deposition, Dkt. 207-2, pg. 47, at lns. 3-9);
(Hoffman Deposition, Dkt. 207-1, pg. 28, at lns. 13-14). This allegation
prompted the School District to hire Costello to investigate the

relationship between Rys and K.S.[2] (Bowe Deposition, Dkt. 207-2, pg. 54-55, at lns. 19-5; pg. 108, at lns. 4-6). The School District asked Costello, specifically Bowe, to investigate the allegation and submit a report with recommendations. (Hoffman Deposition, Dkt. 207-1, pg. 35, at lns. 19-23).

Wanting someone with investigation experience, Bowe reached out to Hoffman and asked whether she wanted to work on this case. (Bowe Deposition, Dkt. 207-2, pg. 70, at lns. 9-16). Hoffman agreed. *See* (Bowe Deposition, Dkt. 207-2, pg. 27, at lns. 17-24). Now tasked with performing the investigation, Hoffman interviewed Rys, K.S., who both identify as lesbians, and many other people. (Hoffman Deposition, Dkt. 207-1, pg. 30 at lns. 1-2, 9-15). The investigation revealed that Rys went to K.S.'s home during the school day and rubbed tiger balm on K.S.'s back. (Hoffman Deposition, Dkt. 207-1, pg. 91 at lns. 21-24; pg. 153, at lns. 2-4). The investigation also found that Rys gifted K.S. a bracelet in morse code and called K.S. "my person." (Hoffman Deposition, Dkt. 207-1, pg. 91 at lns. 7-10). After completing their investigation, Hoffman and Bowe submitted two reports to the School District: a draft report in

---

[2] Costello also generally represented the School District on other unrelated matters.

April 2018 ("April 2018 report"), and a final report in May 2018 ("May 2018 report"). Sometime after receiving the May 2018 report, the School District fired Rys.

### C. Procedural History

Because of her termination, Rys sued the School District and others alleging Title XII, Title IX, Equal Protection, Free Speech, Procedural Due Process, and Malicious Prosecution claims. (Complaint, Dkt. 1, pg. 14-19). Since then, this case has toiled and twisted through six years of motion and discovery practice. *See, e.g.,* (Dkts. 4, 44, 68, 100, 130).

During that time, various judges of this Court have issued several decisions in this case. On January 5, 2023, Magistrate Judge Andrew Baxter, expressly irritated by the conduct of the lawyers, addressed the discovery disputes presented to him. Magistrate Judge Baxter noted "I'm going to provide some specific rulings as well as some general guidance to you about my views as to what discovery will be proportional in this case and then expect you to actually discuss these discovery issues at length and work out, or at least dramatically narrow, your differences with those issues that I haven't definitively

addressed." (Dkt. 99 at 3). Continuing, Magistrate Judge Baxter said:

"I'll say a couple of things about privilege issues and this is off the top of

my head so I'm, you know, going to make this sort of tentative guidance

as opposed to something definitive. I don't know what you have on your

privilege log. To the extent your privilege log relates to the investigation

that was conducted of the plaintiff's conduct towards K.S., given that

you are relying on that conduct as the nondiscriminatory reason for her

termination, I find it hard to believe you're not going to open the door to

turning that over." (Dkt. 33 at pg. 35). To end, Magistrate Judge Baxter

noted his expectation that there would need to be an in-camera review

of the documents to really figure out what's privileged. (*Id.*).

      This Court performed that in-camera review after the Chief Judge

reassigned this case to this Court. After reviewing the documents, this

Court issued an order:

> Reference is made to the privilege log filed at [170-1] and
> specifically the line items on the spreadsheet. The requests
> for items 44, 45, 46 and 47 were previously withdrawn by
> plaintiff. It is ORDERED that the items not specifically
> addressed have been found to be privileged, and it is further
> ORDERED as follows: Item 2 - April 20, 2018 email from
> Grimm to Bowe is privileged. The forwarded email is not
> privileged; Item 11 - May 7, 2018 3:21PM email from Grimm
> to Bowe is privileged. The forwarded email (Grimm to King)

is not privileged, May 7, 2018 4:21PM email from Grimm to
Bowe is privileged, May 7, 2018 4:07PM email from Bowe to
Grimm is privileged, May 7, 2018 3:11PM email from Grimm
to Bowe is privileged, May 7, 2018 2:07PM email from King
to Grimm is not privileged; Item 17 - May 20, 2018 email
from Grimm to Bowe is privileged; May 19, 2018 email and
attachment from KS to Grimm is not privileged; Item 18 -
May 20, 2018 email from Grimm to Bowe is privileged, May
19, 2018 email and attachment from KS to Grimm is not
privileged; Item 23 - May 24, 2018 email from Grimm to
Bowe and Hoffman is privileged, May 24, 2018 email from
mrpostmaster@ccs.edu to Grimm and attachment from Rys
dated May 24, 2018 are not privileged; Item 24 - May 29,
2018 email from Scranton to Bowe is privileged. May 29,
2018 email from mrpostmaster@ccs.edu to Scranton and
attachments (May 14, 2018 letter from Grimm to Rys, and
May 24, 2018 letter from Grimm to Rys) are not privileged;
Item 30 - May 31, 2018 email from Bowe to Grimm and
Scranton is privileged. The following attachments are NOT
privileged - May 4, 2018 letter from Grimm to Rys, May 9,
2018 letter from Rys to Grimm, May 14, 2018 letter from
Grimm to Rys, May 24, 2018 letter from Rys to Board, May
29, 2018 letter from Rys to Whom It May Concern, May 29,
2018 letter from Rys to Board; Item 32 - June 4, 2018 email
from Grimm to Bowe is privileged. The attachment is not
privileged; Item 41 - June 6, 2018 email from Grimm to
Bowe is privileged. The forwarded emails and attachment
are not privileged; Item 42 - June 28, 2018 email from
Grimm to Bowe is privileged. The forwarded email and
attachment are not privileged. The court specifically holds
that the privilege was not waived with respect to items
1,3,4,5,6,7,16,19,21 and 22 (law firm internal drafts of the
investigation and supplemental investigation reports), as the
drafts were prepared by attorneys, contain their mental
impressions, were not shared with the District and could not

bear on the intent and motivation of the District. SO
ORDERED

(October 4, 2024 Text Order, Dkt. 179).

Rys appealed this order and Senior United States District Judge
Scullin affirmed the Court's decision. (Dkts. 185, 205). While the
October 4, 2024 Text Order was on appeal, this Court ordered the
parties to depose Hoffman and Bowe. (Dkt. 199). The parties tried to do
so. *See* (Hoffman Deposition, Dkt. 207-1; Bowe Deposition; 207-2). In
between the bickering and *ad hominem* attacks, Ferrara (and Charles
Spagnoli, Esq. who represented the school district) lodged several
objections at both depositions. The Court now rules on those objections.

## II.    LEGAL FRAMEWORK

"The examination and cross examination of a deponent proceed as
they would at trial under the Federal Rules of Evidence except Rules
103 and 615." Fed. R. Civ. P. 30(c)(1). "An objection at the time of the
examination—whether to evidence, to a parties conduct, to the officer's
qualifications, to the manner of taking the deposition, or to any other
aspect of the deposition—must be noted on the record, but the
examination still proceeds; the testimony is taken subject to any
objection." Fed. R. Civ. P. 30(c)(2). "An objection must be stated

concisely in a nonargumentative and nonsuggestive manner. A person

may instruct a deponent not to answer only when necessary to preserve

a privilege, to enforce a limitation ordered by the court, or to present a

motion under Rule 30(d)(3)." *Id.*

While it is often the case that the focus is on the lawyer defending

the witness, it is clear from the first sentence of Rule 30(c) that the

*examining attorney's* conduct must be the same in a deposition as it

would at trial. *See* Fed. R. Civ. P. 30(c)(1), (c)(2). So, like trial, the

examiner must have a good faith basis for a question. *See, e.g., Hynes v.

Coughlin,* 79 F.3d 285, 294 (2d Cir. 1996) (noting that there must be a

good-faith basis for questions). A question posed in bad faith or in

violation of a prior court order violates this rule. *See* Fed. R. Civ. P.

30(c)(1).

## III.  DISCUSSION

The Court now examines the parties' contentions. First, the Court

breaks down the challenges into five broad categories: (1) This Court's

Prior Order on Work Product; (2) Attorney-Client Privilege;

(3) Impeachment Evidence; (4) Expert Opinion; and (5) Remaining

Challenges. Within each category, the Court recites the controlling legal

framework, identifies the issue, includes the deposition questions that raise issues, and then rules on the objection. Next, the Court finds that Bowe and Hoffman should not be recalled as deposition witnesses. Finally, the Court sanctions Bosman and Ferrara for their conduct.

## A. The Deposition Objections

### 1. This Court's Prior Order on Work Product

Ferrara seeks to preclude Bosman from asking questions that intrude into aspects of the case this Court determined was off limits. Bosman, on the other hand, makes an assortment of arguments that can be summarized as these aspects of the case are not off limits. The Court addresses each challenge.

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(3)(A). Thus, "the work product doctrine provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 362 (E.D.N.Y. 2009) (cleaned up). The doctrine "protects the files and the mental impressions of an attorney reflected . . . in interviews,

statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 146 (2d Cir. 1994) (cleaned up). So work-product protection is afforded to materials "prepared by the attorney [them]self." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

This Court has already determined that the reports *not shared* with the School District are afforded work-product protection. (October 4, 2024 Text Order, Dkt. 179). In fact, this Court held that "privilege was not waived with respect to" the "law firm['s] internal drafts of the investigation and supplemental investigation reports" because "the drafts were prepared by attorneys, contained their mental impressions, were not shared with the district and could not bear on the intent and motivation of the district." (October 4, 2024 Discovery Order, Dkt. 179); *see* (Judge Scullin's May 29, 2025 Order, Dkt. 205, at pg. 3).

Undaunted by this Court's Discovery Order, Bosman hounded the witnesses to circumvent this Court's order. Bosman's frontal assault began with Hoffman:

> **Bosman**:  How many versions of the report did you do?

**Spagnoli**: Objection to form.

**Ferrara**:  Objection to form. Instruct the witness not to answer. Attorney-client privilege.

**Bosman**:  Certify that.

(Hoffman Deposition, Dkt. 207-1, pg. 99-100, at lns. 21-2).

\* \* \*

**Bosman**:  No, I mean how many versions of the report were there?

**Spagnoli**: How many drafts?

**Bosman**:  Sure, how many drafts. How many drafts?

**Spagnoli**: Objection.

**Bosman**:  Certify the question.

(Hoffman Deposition, Dkt. 207-1, pg. 100, at lns. 16-22).

\* \* \*

**Bosman**: What did you add or remove from the original draft?

**Spagnoli**: Objection

**Ferrara**: Objection to form?

**Bosman**: After you had interviewed a witness?

**Ferrara**: Objection to form, instruct the witness not to answer

**Bosman**:  Certify the question.

(Hoffman Deposition, Dkt. 207-1, pgs. 102-103, at lns. 19-1).

Bosman also approached Bowe with the same line of questioning:

**Bosman**: Did you review the final reports that were prepared by Ms. Hoffman?

**Ferrara**: Object to form. You can answer.

**Bowe**: I know I reviewed the draft report and most likely was copied on the final report.

**Bosman**:  How many draft reports were there?

**Bowe**: I don't recall.

**Spagnoli**: Objection. Goes beyond the scope. If you want to ask her about the one draft that was shared with the school district, that's okay.

**Bosman**: Oh. Come on.

**Spagnoli**: But it's been ruled that other drafts are not subject to question.

**Bosman**: All right. Certify the question. I'm not going to put up with that. You don't be — you don't be coaching our witness. You know better than that.

**Spagnoli**: I'm making an objection. And it was well founded, as you know.

**Bosman**: No. It was not well founded at all. It was typical of you, but it was not well founded.

(Bowe Deposition, Dkt. 207-2, pg. 109-110, lns. 17-17) (cleaned up)

\* \* \*

**Bosman**: Did you make any corrections or make any suggestions to Ms. Hoffman with respect to the reports?

**Spagnoli**: Objection. Again, unless the question is limited to the one draft that was shared with the school district, you go –

**Bosman**: Oh. Cut it out.

**Spagnoli**: —contrary to the judge's order.

**Bosman**: Certify the question.

**Bosman**: Did you change anything on the draft report that was provided to you for review by Ms. Hoffman?

**Spagnoli**: Same objection. I believe that this questioning end run – is – an attempt to end run the judge's ruling.

**Bosman**: What you believe is irrelevant, Charles. Certify the question.

**Spagnoli**: I haven't instructed the witness not to answer. Any such instruction would have to come from Mr. Ferrara.

**Ferrara**: I'm going to instruct the witness not to answer.

(Bowe Deposition, Dkt. 207-2, pg. 113, lns. 5-19.)

* * *

**Bosman**: And what happened to the annotated draft investigative report that you prepared in – on April 22, 2018?

**Spagnoli**: Okay. I'm going to object. This invades the area that has been ruled off limits by both magistrate judge and the district judge. It's attorney-client privileged and work product.

14

**Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2, pg. 133, lns. 16-23.)

* * *

**Bosman** What — yeah. What was the initial contact with Ms. Rys with respect to her being seen with [K. S.]?

**Ferrara**: Objection to form. You can answer as to what your knowledge of the initial contact was.

**Bowe**: I don't —

**Spagnoli**: Yeah. I'm going to —hold on. I'm going to object to that because I believe it go — it threatens to go outside the scope of the fact investigation that began on April 3, 2018, and therefore it is in violation of the attorney-client privilege and beyond the scope of what the judges have allowed you to get into in discovery here.

**Ferrara**: Based on that objection, [Bowe], I have to instruct you not to answer.

**Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2, pg. 161-162, lns. 16-7.)

The Court denies Bosman's motion to compel as to these questions. "Questioning of a witness which is obviously designed to discover an attorneys' work product" is not permitted. *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01-CV-9291, 2002 WL 1334821, at *5 (S.D.N.Y. June 19, 2002). In addition, this Court's Discovery

Order limited Bosman to asking Hoffman about the April 2018 Draft Report and May 2018 Final Report because the drafts that were not shared with the School District "could not bear on the intent and motivation of the" School District. (October 4, 2024 Discovery Order, Dkt. 179); *see* (Judge Scullin's May 29, 2025 Order, Dkt. 205, at pg. 3) (affirming that order). Yet it is undeniable that Bosman's questioning was an end run around the Court's October 4, 2024 Discovery Order. That conduct is intolerable. In plainer terms, Bosman's question was not a sheep in wolf's clothing: that wolf came as a wolf. In consequence, Spagnoli's and Ferrara's objections on this score are *sustained*.

Bosman's counter argument on this point is unpersuasive. Bosman argues that "the October 4 Order placed no limitation on the scope of depositions." (Reply Brief, Dkt. 226, at pg. 7) (cleaned up). That is both disingenuous and wrong. Fed. R. Civ. P. 26(b)(3) "defines a qualified immunity from discovery for documents prepared in anticipation of litigation or for trial" and "this immunity applies . . . to deposition testimony concerning the substance of such work-product." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993). Here, the Court's October 4 2024 Discovery Order

found that work-product doctrine protects several items. (October 4, 2024 Discovery Order, Dkt. 197). Implicit in this ruling is a finding that Bosman cannot depose witnesses on these items because they are protected. The argument that the Court's Order did not specifically limit the scope of the depositions is specious; Bosman is an experienced trial attorney and knew better. The Court did not need to spell out for counsel that which was plainly obvious. So contrary to Bosman's argument, the Court's October 4, 2024 Discovery Order limited the scope of the deposition.

### 2. Attorney-Client Privilege.

Ferrara objects to several questions arguing that they invade the protections of attorney-client privilege. Bosman disagrees. The Court now addresses those arguments.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Attorney-client privilege "requires the client's attorney, to protect from disclosure communications made in confidence relating to legal advice sought by the client from the lawyer in the lawyer's professional capacity." *MacKenzie-Childs LLC v.*

*MacKenzie-Childs*, 262 F.R.D. 241, 247 (W.D.N.Y. 2009).  It is axiomatic
that information protected by attorney-client privilege is not
discoverable. *See, e.g., Robinson v. Time Warner, Inc.*, 187 F.R.D. 144,
146 (S.D.N.Y. 1999) ("Plaintiff is neither entitled to discover the notes
taken by Levien or any other attorney assisting Levien in the internal
investigation, nor allowed to review the final investigative report
prepared by Levien."); *see also Upjohn*, 449 U.S. at 390 ("[T]he
[attorney-client] privilege exists to protect not only the giving of
professional advice to those who can act on it but also the giving of
information to the lawyer to enable him to give sound and informed
advice.").

    To start, the target of Bosman's question makes no sense. This
portion of the colloquy began as Bosman questioned Hoffman about
whether there was a duty to report the subject matter of this action to
Child Protective Services. (Hoffman Deposition, Dkt. 207-1, pgs. 40-42).
Bosman began:

> **Bosman**:  Did the discussion of whether or not to
> report the matter involving my client to Child
> Protective Services ever come up in conversations
> with you and Melinda [Bowe]?  [emphasis added]

>    **Ferrara**: Object to form. You mean between her
>    and Melinda?
>
>    **Bosman**: Yes.
>
>    **Ferrara**: *To the extent* that involves attorney-
>    client privilege I'm instructing the witness not to
>    answer. I'm instructing her not to answer.
>    [emphasis added]

(Hoffman Deposition, Dkt. 207-1, pg. 42, at lns. 9-20).

Ferrara understood the question as potentially asking whether

Hoffman and Bowe advised the School District to report Rys to Child

Protective Services. With that understanding, it is clear why Ferrara

objected: Costello represented the School District in other matters, so

without a specific time frame, Bosman's question *may* (note Ferrara's

use of the phrase "to the extent") pierce attorney-client privilege.

But the remainder of the colloquy is instructive here. Bosman

continues:

>    **Bosman**: Was that an attorney-client
>    conversation that you had with Melinda Bowe?
>
>    **Ferrara**: Assuming it was a conversation, by her
>    answering would violate attorney-client privilege.
>
>    **Bosman**: Certify the question.
>
>    **Bosman**. Did you have any conversations with
>    Melinda Bowe as a client?
>
>    **Ferrara**: Her as a client?

**Bosman**: Yes.

**Ferrara**: Objection to form. Instruct her not to answer.

**Bosman**: Certify the question.

**Bosman**. Did you have any understanding that Melinda Bowe was your client?

**Ferrara**: Objection to form. Instruct the witness not to answer.

**Bosman**: Certify the question.

**Bosman**: Did you have at any time an understanding that Melinda Bowe was seeking legal advice from you?

**Ferrara**: Objection to form. Instruct the witness not to answer.

**Bosman**: Certify the question.

**Bosman**: Did you provide Melinda Bowe legal advice at any time?

**Ferrara**: Objection to form. Instruct the witness not to answer.

**Bosman**: Certify the question.

(Hoffman Deposition, Dkt. 207-1, pgs. 42-44, lns. 21-1).

With context, it seems that Bosman was asking about a possible attorney-client relationship between Hoffman and Bowe—who were an associate and partner at Costello during the investigation. That said,

Bosman never asked about conversations between the attorneys and the School District. So, the Court *overrules* Ferrara's objection.

On the other hand, Ferrara's objection to Bosman's attempt to pry into the substance of Bowe's attorney-client relationship with the School District is *sustained*. Attorney-client privilege protects communications made "to facilitate the rendering of legal services by the attorney." *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 518 (S.D.N.Y. 1992) (cleaned up). Yet Bosman tried to circumvent the protections of attorney-client privilege when she asked:

* * *

> **Bosman**: Did you advise at any time the school district to report Marissa Rys for having an inappropriate relationship with a student?
>
> **Spagnoli**: Okay. I'm going to object to that. I believe it invades the attorney-client privilege and it's not part of the fact investigation which is open for discovery here.
>
> **Bosman**: What do you mean it's not part of the fact investigation that is open for discovery here? What are you talking about?
>
> **Spagnoli**: I mean that her advising the school district as to whether

**Bosman**: (Indiscernible simultaneous speech) unless I can see you. You want to put your camera on for a minute?

**Spagnoli**: Please don't — I'm going to make my objection. Please don't interrupt me while I'm making my objection.

**Bosman**: I can't — I don't even know that it's you talking because I can't see you, so I'm not going to respond to that.

**Spagnoli**: Okay. I'm going to object.

**Bosman**: Ms. Bowe, could you please advise —

**Spagnoli**: Hold on. Hold on just a second (indiscernible - simultaneous speech).

**Bosman**: —the point in time that you called the school district after you completed the investigation —

**Spagnoli**: (Indiscernible simultaneous speech) report is not part of the fact investigation and it would be attorney-client privilege.

**Bosman**: Certify the question. Certify the question.

(Bowe Deposition, Dkt. 207-2, pgs. 91-92, at lns. 12-20).

* * *

**Bosman**: Have you ever advised the school district with respect to Title IX and sex discrimination based upon sexual orientation or perceived orientation?

**Spagnoli**: Objection. Attorney-client privileged

> **Ferrara**: Same objection. Instruct the witness
> not to answer.

(Bowe Deposition, Dkt. 207-2, pg. 140, at lns. 1-17).
These questions were improper. With this line of questioning, Bosman
sought to air out the legal advice Bowe had given to a client. Ferrara
was right to object. As a result, Spagnoli's objections are *sustained*.

A similar analysis applies here. Bosman broadly asked Hoffman
for information communicated between herself and K.S.:

> **Bosman**: Did you make any effort to provide [K.
> S.] with a counseling during the time that you
> were conducting this so-called investigation?
>
> **Ferrara**: Objection to the form, characterization.
> You can answer.
>
> **Spagnoli**: Objection. I believe this is beyond the
> question of fact investigation. Based on attorney-
> client privilege I direct the witness not to answer
> attorney conversations about recommendations
> she made to the School District.
>
> **Bosman**: Certify the question.

(Hoffman Deposition, Dkt. 207-1, pg. 80-81 lns 10-22).

This question was broad enough to potentially cause the witness
to reveal an attorney-client communication. In contrast, Spagnoli's
objection was specific, and the direction was narrow—do not share

attorney-client communications in the answer. Thus, the objection is *sustained.*

Bosman also questioned Hoffman about her communications with anyone:

> **Bosman**: Did anyone tell you that [Marissa Rys] was untruthful in any matter after the investigation?
>
> **Ferrara**: Objection to form. That's something to be taken as privileged.
>
> **Bosman**: I'm sorry?
>
> **Ferrara**: Attorney-client privilege.
>
> **Bosman**: Whether or not someone told her she was untruthful after the
>
> **Ferrara**: Absolutely.
>
> **Bosman**: Certify the question.

(Hoffman Deposition, Dkt. 207-1, pgs. 121-122, lns. 15 – 2).

Leading up to this question, Bosman asked Hoffman whether she thought K.S. was truthful, whether she thought Rys was truthful, and whether she was aware if Rys had a history of not telling the truth. The witness answered all of these questions. (Hoffman Deposition, Dkt. 207-1, pgs. 120 -121). With that context, the above question may have called for a privileged communication, so the objection is *sustained*. There was

no direction to the witness not to answer the question, so the motion to compel is denied on this score.

But not all of Bosman's question sought to intrude on the protections of attorney-client privilege. Specifically:

> **Bosman**: Did you have any discussions with your co-counsel regarding sexual orientation or perceived sexual orientation of Marissa Rys at any time?
>
> **Ferrara**: Objection.
>
> **Spagnoli**: Objection.
>
> **Ferrara**: Attorney-client privilege and work product.
>
> **Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2, pgs. 140, at lns. 10-17).

Here, Bosman's question did not ask for the content of any communication. It called for a yes or no response. The answer to that question may reveal attorney work product and mental impressions, but it also may reveal a bias. While the Court finds that Spagnoli and Ferrara's objection was well founded, the Court *overrules* that objection.

A similar analysis applies to Bosman's questions as to the School District's clerk:

> **Bosman**: And who's Julia Scranton?

**Bowe**: The district clerk.

**Bosman**: So I noticed there's a lot of emails copied to her. Why would you be copying Julia Scranton?

**Bowe**: She has a role in the school district and personnel and board matters. So she obviously assists Dr. Grimm in preparing correspondence notices. Also the Board overseeing resolution formation, et cetera.

**Bosman**: Did you represent Julia Scranton as a client at any time?

**Bowe**: Individually? No.

**Bosman**: As a member of the school district?

**Ferrara**: Objection. (Indiscernible) invade attorney-client privilege. Instruct the witness not to answer.

**Bosman**: You can answer.

**Ferrara**: Oh. No. She can't answer, A.J. I'm instructing —

**Bosman**: Oh. You're directing her not to answer that?

**Ferrara**: Yeah. You're asking her to invade attorney-client privilege.

**Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2, pgs. 141-142, at lns. 4-1).

The question called for a yes or no answer. The fact of representation may arguably be pertinent to a claim of privilege and

whether privilege has been waived. That said, as the witness identified Scranton as the district clerk, as well as listing some of her duties, it is clear that Scranton is part of the School District's leadership team such that including her in counsel communications could not fairly be argued to have waived any privilege. Still, the witness should have been allowed to answer the question. The Court *overrules* the objection.

### 3. Expert Opinion

Ferrara objects to several of Bosman's questions, arguing that the questions called for Hoffman and Bowe, who are testifying as lay fact witnesses, to give expert opinion. In contrast, Bosman argues that none of her questions calls for an expert opinion. The Court now addresses those contentions.

"Opinion testimony by lay witnesses is governed by Fed. R. Evid. 701." *In re Illusions Holdings Inc.*, 189 F.R.D. 316, 317 (S.D.N.Y. 1999). That rule provides that if a "witness is not testifying as an expert," their opinions or inferences are "limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a

fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

On the other hand, expert witness testimony is governed by Fed. R. Evid. 702. *In re Illusions Holding Inc.,* 189 F.R.D. at 317. That rule provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702

"The distinction between a lay witness' and an expert witness' opinion is that a lay witness provides an opinion resulting from a process of reasoning familiar with everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Lamere v. New York State Off. For The Aging*, 223 F.R.D. 85, 88 (N.D.N.Y. 2004) (cleaned up).

Understanding the differences between lay and expert testimony, the Court parses through Ferrara's objections. The first relevant colloquy begins:

> **Bosman**: Did you ever learn the elements of school law with respect to reporting allegations of abuse or neglect?
>
> **Ferrara**: Object to form. Instruct the witness not to answer. Not here to give legal opinion. Here to testify to facts what she did in this case.
>
> **Bosman**: Certify the question.

(Hoffman Deposition, Dkt. 207-1, pg. 44, at lns. 16-24.)

The question did not call for an opinion. It asked for a fact about

Hoffman's law school education. Thus, the Court *overrules* the objection.

The next colloquy pertains to Hoffman's training on "developing

sexual identity."

> **Bosman**: And how many of those [trainings] have involved, I guess you would call it, developing sexual identity?
>
> **Ferrara**: Objection to form. If you understand the question you can answer.
>
> **Hoffman**: I'm not sure what you mean by developing sexual identity.
>
> **Bosman**: That's what happens with adolescents, correct?
>
> **Ferrara**: Objection to form. If you know what that is. That's a medical question.

(Hoffman Deposition, Dkt. 207-1, pg. 84, at lns. 6-17).

Again, this question did not ask for an expert opinion. The question, while poorly phrased, seems to ask whether any of the trainings Hoffman pertained to the sexual development of adolescents, which does not call for expert opinion.

But even reading the second question in a vacuum (a better phrasing would be do adolescents develop sexually) it still does not call for expert testimony. Answering the second question does not require specialized training to understand that teenagers have some level of sexual development. That said, the Court *overrules* the objection.

Turning to Bosman's deposition of Bowe, Ferrara objected to questions he felt called for expert testimony. The first relevant colloquy begins:

> **Bosman**: What is your understanding of the obligation of the school district to make reports to Child Protective Services if they believe that a teacher is, quote-unquote, grooming a student?
>
> **Ferrara**: Objection to form. Again, you're calling for expert testimony. She's here as a lay witness, A.J.
>
> **Bosman**: She's a lawyer.
>
> **Ferrara**: Doesn't— she's not an expert for you in this —

**Bosman**: I'm not asking her as an expert. I'm asking her understanding.

**Ferrara**: Yes. You are. You're asking for a legal opinion.

**Bosman**: No. I'm not.

**Bosman**: Do you have a question — do you have an understanding of the question, Ms. Bowe?

**Ferrara**: I'm directing the witness not to provide expert testimony.

**Bosman**: Okay.

**Ferrara**: You can certify the question.

**Bosman**: Not as an expert. Not as an expert. As a lay witness.

* * *

**Ferrara**: Melinda, you can answer that question if you have knowledge that came to you outside of your profession as a lawyer. (Indiscernible) knowledge as a lawyer, then she's asking for an expert opinion, and I'm going to direct you not to answer.

**Bosman**: You can answer.

* * *

**Bowe**: It would depend on the definition in the law. So, as I said to you before, yes. School personnel are mandated reporters for the purpose of child abuse. So it would involve looking at the definition of what child abuse was to decide whether that is something that needs to be

> reported or not. That's my working knowledge
> and not specific to the circumstances here in this
> matter.

(Bowe Deposition, Dkt. 207-2, pgs. 94-95, at lns. 1-25).

This objection is moot. To sum up, Ferrara objected to the question, arguing that it called for an expert opinion. Bosman then clarified that she was seeking a lay witness understanding, and eventually the witness answered the question. In other words, any request for relief concerning this question is moot.

The next relevant disagreement pertains to lawyers' obligation to their clients. Bosman began this line of questioning:

> **Bosman:** Does an attorney have an obligation to
> be honest with witnesses when they interview
> them?
>
> **Ferrara**: Objection to form. Now you're asking
> for expert testimony. I'm going to direct the
> witness not to answer. She's not here to be an
> expert to you or your client.
>
> **Bosman**: (Indiscernible simultaneous speech).
> No. You don't need to go on and on. You're taking
> up too much time. Certify the question.

(Bowe Deposition, Dkt. 207-2, pg. 110-111, at lns. 24-9).

Bosman also asked:

**Bosman**:  Did you have any obligation to Marissa Rys during the conduct of an investigation in this matter?

**Ferrara**: Object to form. You can give whatever unlegal opinion is.

[Witness indicates not understanding the question.]

**Bosman:**  Did you have any obligation whatsoever to Marissa Rys during this investigation?

**Ferrara**: Objection. Now you're asking for expert testimony. I'm going to instruct the witness not to answer. We can certify the question and the magistrate [judge] can make a ruling.

**Bosman**: As the attorney for the school district, did you have any obligation to Marissa Rys, as one of the employees of that school district during the investigation of this matter?

**Ferrara**: Same objection. I instruct the witness not to answer.

**Bosman**: Certify the question. What's wrong with that one?

**Ferrara**: You're asking for legal opinions.

**Bosman**: No. No. No. I'm asking her as an investigator.

**Bosman:**  Do you have an obligation as an investigator?

> **Ferrara**: Still asking for a legal opinion and conclusion, A.J. And I'm going to instruct the witness not to answer.
>
> **Bosman:** All right. Why don't we just—why don't we just—okay. I'll certify the question.

(Bowe Deposition, Dkt. 207-2, pg. 116-118, at lns. 23– 11.)

* * *

> **Bosman**: Did you have any obligation to Marissa Rys at any time during this investigation?
>
> **Ferrara**: I appreciate the soliloquy you placed on record, A.J. We respectfully disagree with your legal analysis, and we can certify it for the magistrate [judge].
>
> **Bosman**: Do you understand the question, Ms. Bowe? I'm deferring to my—
>
> **Ferrara**: (Indiscernible) that was a nice soliloquy.

(Bowe Deposition, Dkt. 207-2, pg. 119-120, at lns. 20–5.)

These questions, as Ferrara noted, asked Bowe for a legal opinion. The questions were intended to have Bowe testify as to her interpretation of case, statutory, or regulatory law, and confirm whether she had a legal duty to Rys while conducting the investigation. These questions were improper, so the Court *sustains* the objections. *See, e.g., United States v. Patel*, No. 21-CR-220, 2023 WL 2643815, at *41 (D. Conn. Mar. 27, 2023) ("To the extent that any lay witness's

34

testimony extends beyond the scope of personal perception by opining on the legality of non-compete agreements, such testimony is inadmissible"); *Ferrari Club of Am., Inc. v. Bourdage*, No. 6:12-CV-06530, 2017 WL 1498080, at *1–6 (W.D.N.Y. Apr. 25, 2017) (finding witness' testimony inadmissible as lay witness testimony because it was based on his "professional opinion"). In consequence, Ferrara's objections to these questions are *sustained*.

The same analysis applies to Bosman's question on sexuality. This colloquy began when Bosman asked Bowe:

> **Bosman:**  Am I correct that considering someone's sexual orientation or perceived sexual orientation in conducting an investigation would be evidence of discrimination?
>
> **Ferrara**: Objection to form. Now you're asking for an expert opinion. Instruct the witness not to answer.

(Bowe Deposition, Dkt. 207-2, pg. 140, at lns. 1-17).

Again, Bosman's questioning seeks to have Bowe answer what is and is not evidence in a lawyer's investigation. That is impermissible because it asks for a legal opinion. So like above, Ferrara's objection on this score is *sustained*.

Bosman later asked for Bowe's opinion on honesty in investigations. That colloquy went like this:

> **Bosman**: Is it important for the investigator to be honest with the witnesses?
>
> **Spagnoli**: Objection.
>
> **Ferrara**: Objection to form. You can answer if you can. Now we're getting into a lot of opinions testimony.
>
> **Bowe**: Yeah. Investigator, I mean, obviously they're trying to get to the bottom of the story and ferret out facts.
>
> **Bosman**: Is it important for the investigator to be honest with the witness?
>
> **Ferrara**: Objection to the — I'm sorry. I'm going to object to this line of questioning. You're asking her for opinion testimony. She's a non-party fact witness. I'm going to instruct her not to answer.
>
> **Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2, pg. 176-77, at lns. 19-11).

Bosman had no need to re-ask the question because Bowe clearly answered it the first time. The motion to compel, on this score, is moot.

### 4. Impeachment Evidence

Ferrara argues that Bosman's questioning seeks to obtain impeachment evidence and runs the risk of creating a trial within a

trial. Bosman argues that's not so. The Court now addresses these issues.

Fed. R. Evid. 608 "governs the circumstances under which evidence other than the criminal conviction of a witness may be introduced to attack the witness's character for truthfulness." *United States v. Levin*, No. 15-CR-101, 2016 WL 8711458, at *7 (S.D.N.Y. Jan. 8, 2016) (cleaned up). "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness' conduct in order to attack or support the witness' character for truthfulness." Fed. R. Evid. 608(b) (cleaned up). Impeachment evidence is not automatically admissible. *See, e.g., Alaei v. State Univ. of New York at Albany*, No. 1:21-CV-00377 (BKS/TWD), 2025 WL 1549050 (N.D.N.Y. May 30, 2025) (deciding whether to admit impeachment evidence that Defendants argued could cause a trial within a trial.) In fact, Courts maintain wide latitude to deny impeachment evidence if it creates a trial within a trial. *See Levin,* 2016 WL 8711458, at *10 (evidence introduced for impeachment purposes must not "lead the Court down the path of a 'trial within a trial' on a peripheral issue.").

Bosman pestered both Hoffman and Bowe about Bowe's

settlement with Costello:

> **Bosman**: Did Ms. Bowe have to pay the firm
> money?
>
> **Ferrara**: Objection to the form. Instruct the
> witness not to answer.
>
> **Bosman**: Certify the question.
>
> **Ferrara**: Confidential.
>
> **Bosman**: Certify the question.

(Hoffman Deposition, Dkt. 207-1, pg. 76, at lns. 18-23.)

* * *

> **Bosman**: Do you know whether or not she had to
> pay the firm any money?
>
> **Ferrara**: Instruct the witness not to answer.
>
> **Bosman**: Yes or no question.
>
> **Ferrara**: She's not going to answer.
>
> **Bosman**: Certify the question.
>
> **Bosman**: Were you involved at all in the
> litigation with Ms. Bowe?
>
> **Ferrara**: Objection.
>
> **Bosman**:  Certify the question.
>
> **Bosman**: Were you interviewed at all in the
> matter against Melinda Bowe?

**Ferrara**: Objection to form. First of all, irrelevant and attorney-client privilege. Instruct the witness not to answer.

**Bosman**: Certify the question.

**Bosman**: So Melinda Bowe moves to North Carolina. She's sued by your firm. You may or may not have been interviewed regarding that. Did you have any conversations with anyone regarding this matter of Melinda Bowe during the litigation?

**Bosman**: Object to form. Instruct the witness not to answer. Attorney-client privilege.

**Bosman**: Certify the question.

**Ferrara**: You're not answering.

**Bosman**: I certified question, you don't have to repeat.

(Hoffman Deposition, Dkt. 207-1, pgs. 76-77, at lns. 24-25)

* * *

**Bosman**: How was your lawsuit resolved with Costello, Cooney & Fearon?

**Ferrara**: Objection to form. Instruct the witness not to answer since the settlement is subject to a confidential settlement.

**Bosman**: I didn't ask you how it was resolved. I asked the witness.

**Ferrara**: Doesn't matter. I'm invoking that because it's in the settlement agreement. It's confidential.

(Bowe Deposition, Dkt. 207-2, pg. 151, at lns. 13-22)

\* \* \*

Bosman then asked Bowe about her relationship with Costello:

> **Bosman**: Are you being represented by the Costello, Cooney & Fearon firm pursuant to a separate retainer?
>
> **Ferrara**: Objection to form. She's being represented by my firm.
>
> **Bosman**: I didn't ask you. I asked the witness.
>
> **Ferrara**: No. She's not going to (indiscernible) invades attorney-client privilege. She doesn't have to answer why or how she retained us.
>
> **Bosman**: Are you telling her not to answer.
>
> **Ferrara**: Yes.
>
> **Bosman**: Certify the question.
>
> **Bosman**: Did it concern you that your current attorneys might have a conflict of interest because they had previously sued you, Ms. Bowe?
>
> **Ferrara**: Objection to form. Instruct the witness not to answer. And that's a completely irrelevant question.
>
> **Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2, pg. 151-153, at lns. 13-4).

Bosman's questions were untethered from Bowe's truthfulness.

During the course of Bowe's deposition, Bowe told Bosman that the

conflict between herself and Costello arose from Costello's decision to

distribute money to Bowe and later seek to recoup it. (Bowe Deposition, Dkt. 207-2, pg. 23-24). Nothing there can be construed as relating to deceit, falsehood, or dishonesty. Worse yet, Bosman is trying to rely on mere unadjudicated allegations to prove untruthfulness, which is impermissible. *See In re UBS AG Sec. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *17 n.17 (S.D.N.Y. Sept. 28, 2012) (cleaned up) ("However, because such allegations are taken directly from uncorroborated allegations embedded in a complaint in another action, the Court will not consider them."). The lawsuit between Costello and Bowe is not probative of truthfulness, and therefore not discoverable, and will only confuse the issues by creating a trial within a trial. For that reason, the Court sustains all of Ferrara's objections to Bosman's questions.

### 5. Remaining Challenges

The Court now examines the remaining objections. These objections can be categorized into three broad categories: asked and answered, argumentative, and clarification objections.

The Federal Rules of Evidence do not recognize "asked and answered" as an objection. *Thompson v. Workmen's Circle Multicare Ctr.*, No. 11-CV-6885, 2015 WL 4591907, at *5 (S.D.N.Y. June 9, 2015).

So objections made on this ground, at depositions, are improper. Yet

Ferrara objected to several questions arguing that they were asked and

answered:

> **Bosman**: At any time during this investigation, was your firm doing anything other than representing the Clinton Central School District?

> **Ferrara**: Asked and answered repeatedly. The witness is instructed not to answer again.

> **Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2, pg. 115-116, at lns. 22-4)

* * *

> **Bosman**: What is "general supervision" as opposed to "specific supervision"?

> **Ferrara**: Objection. Has been asked and answered. I'm going to instruct the witness not to answer again.

> **Bosman**: What does "general supervision" mean?

> **Ferrara**: Same objection. That's been asked and answered. I'm going to instruct the witness not to answer.

> **Bosman**: Certify the question.

> **Bosman**: What is your – in your mind, the distinction between general supervision and your overview, which allowed you to revise the report repeatedly?

> **Ferrara**: Objection. That's been asked and answered. Instruct the witness not to answer.
>
> **Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2 at 158-159, lines 19-14).

\* \* \*

> **Bosman**: You don't know who provided that training?
>
> **Ferrara**: Objection. Asked and answered.
>
> **Bowe**: I received training with regard to gender identity at numerous conferences and programs. It's not been from one particular company or entity. I don't recall.

Because "asked and answered" objections are not recognized by the Federal Rules of Evidence, the Court *overrules* all of Ferrara's "asked and answered" objections.

The same analysis applies to Ferrara's argumentative objection. Specifically, the colloquy went so:

> **Bosman**: You weren't independent from the school district at any time during this investigation, correct?
>
> **Spagnoli**: Objection to form.
>
> **Ferrara**: Form. I instruct the witness not to answer. That's argumentative.
>
> **Bosman**: Certify the question.

(Bowe Deposition, Dkt. 207-2, pgs. 114-115, at lns. 24-5).

Rule 30 does not recognize an "argumentative" objection. Yet it is clear that the opening question in this colloquy was intended to harass or annoy the witness. *But* the remedy was not to object, it was "to adjourn the deposition and promptly seek judicial assistance pursuant to Rule 30(d)(3)(A)." *Scott-Iverson v. Indep. Health Ass'n, Inc.*, No. 13-CV-451V, 2017 WL 35453, at *4 (W.D.N.Y. Jan. 4, 2017). But Ferrara failed to do so. As a result, Bowe should have answered the question. The Court *overrules* the objection.

Finally, this Court denies Ferrara's after-the-fact-attorney-client-privilege rationale for interrupting Bosman's questioning. Ferrara interrupts Bosman numerous times:

> **Bosman**: And what type of conduct did you understand you were investigating?
>
> **Bowe**: Improper actions by a teacher with a student.
>
> **Bosman**: Such as what?
>
> **Ferrara**: Are you asking what they asked for the investigation or throughout the investigation?
>
> **Bosman**: Do you understand the question, Ms. Bowe?
>
> **Bowe**: Why don't you ask it again?

**Bosman**: Could you read back the question, Gina?

\* \* \*

**Ferrara**: Again, A.J. are you talking about when she was initially asked to do an investigation or during the course of the investigation?

**Bosman**: I asked the witness if she understood the question. She asked it to be read back. I had it read back. Do you understand the question?

**Ferrara**: So you don't want to provide clarification for the witness?

**Bosman**: No. That's for you, P.G. and I don't have to do it for you.

**Ferrara**: Okay. Then I'm going to instruct the witness not to answer until you clarify the question.

**Bosman**: Certify for the record.

(Bowe Deposition, Dkt. 207-2 at 47-49, lns 24-12)

\* \* \*

**Bosman**: What was the conduct that you understood that you were investigating, Ms. Bowe?

**Ferrara**: At what time, A.J.?

**Bosman**: Do you understand the question?

**Ferrara**: No, A.J. To clarify, at what point you're asking —

**Bosman**: I'm not — it's not you, P.G. I'm not asking you.

**Ferrara**: (Indiscernible) I'm going to instruct the witness not to answer because you're asking a misleading question.

**Bosman**: Certify the question. Do you have an understanding of what type of conduct you were investigating?

**Ferrara**: Same objection, A.J. Will you clarify?

**Bosman**: You can answer. Go ahead.

**Ferrara**: No. She can't until you clarify the question, A.J. It's a reasonable request.

**Bosman**: Do you understand the question, Ms. Bowe?

**Bowe**: It would be clearer if there was a point in time.

**Bosman**. At what point in time would you like to start?

**Bowe**: You asked what point —

**Bowe**: I'm sorry. I can't hear if there's an objection or not.

**Ferrara**: Yeah. So, A.J., you're asking a question, please ask a question with a clarification with a time period.

**Bosman**: Okay. You can answer.

**Ferrara**: No. You can't. I'll instruct the witness not to answer.

**Bosman**: Come on. What are you trying to do this for? What point in time would you like to start with, Ms. Bowe, that you understood what kind of conduct you were investigating?

**Ferrara**: A.J., please ask the question properly and the witness can answer.

**Bosman**: All right. I'm going to call the judge. I'm not going to put up with this, P.G. It's ridiculous.

**Ferrara**: No. It's not.

**Bosman**: You're instructing the witness not to answer under these circumstances you know is improper.

**Ferrara**: A.J., your question's improper. You're trying to mislead the witness and confuse the witness. She made a reasonable request.

**Bosman**: Wait a minute. Wait minute. Wait a minute. Ms. Bowe, do you feel misled?

**Bowe**: I told you that it would be beneficial to have a point in time.

**Bosman** And I asked you what point in time would you like to begin with?

**Bowe**: But I'm not understanding —

**Ferrara**: (Indiscernible simultaneous speech.)

**Bosman**: I'm asking the question. What point in time did you have an understanding of what conduct you were investigating?

**Ferrara**: That's not the same question, A.J. You can ask her what they asked her to investigate when they initially contacted her. That's why —

**Bosman**: Well, you can ask her that when you ask her questions.

**Ferrara**: A.J., (indiscernible) answer your questions. If you want to call the (indiscernible), I'm more than happy to discussion with them about —

**Bosman**: Let's go off the record. Let's go off the record.

**The Proceedings Officer**: Let me take you off the record. We're off the record at 1:24 p.m., Eastern Standard Time.

**The Proceedings Officer**: We are back on the record at 1:41 p.m., Eastern Standard Time. Counsel, you may proceed.

**Bosman**: Could you read back the last question for me, please, Gina?

**The Proceedings Officer**: Yes. Give me one second and I will pull it up for you.

**Bosman**: I hear some noise in the background. I don't know where it's coming from.

**Ferrara**: I suspect that's the landscaper outside my window.

**The Proceedings Officer**: I think the question was, because you were going back and forth: (Readback as requested.)

> **Bosman**: Okay. So for the record, I contacted
> Judge Katz's chambers and he's not available this
> afternoon. So I'm going to certify the last three
> questions which the witness was directed not to
> answer.

(Bowe Deposition, Dkt. 207-2 at 49-53, lns 14-19)

Ferrara never objected based on privilege so his post hoc rationalization for this behavior is completely unpersuasive. *See* (Witnesses Memo of Law, Dkt. 223-1 at pg. 9) While it would have been easier for Bosman to provide a time period to the witness as Ferrara requested, Bosman was not required to do so. More importantly, none of the objections interposed by Ferrara were appropriate, and the directions not to answer the questions were improper. The Court *overrules* the objections, and the questions (which unnecessarily include obvious duplicates) should have been answered.

## B. Re-deposing Bowe and Hoffman

The Court finds that Bosman should not be allowed to re-depose the witnesses. Discovery needs to be relevant and proportional to the needs of the case. Here, Bosman cannot show that recalling both non-party witnesses and asking the questions that should have been answered would yield information relevant and proportional to this

case. As a result, the Court denies the motion to compel

notwithstanding its rulings on the various questions.

Parties can obtain discovery "relevant to any party's claim or

defense and proportional to the needs of the case." Fed. R. Civ. P.

26(b)(1). If the information a party seeks is not relevant or proportional

to the needs of the case, district courts can deny a party's request to

compel the redeposition of a non-party witness. *Cf. United States Sec. &*

*Exch. Comm'n v. Collector's Coffee Inc.*, 338 F.R.D. 309, 317 (S.D.N.Y.

2021) (denying a party's request to depose non-party witnesses in part

because the request was disproportionate); *see also Concord Boat Corp.*

*v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("the status of a

witness as a non-party to the underlying litigation entitles the witness

to consideration regarding expense and inconvenience"). Courts also

examine "the importance of the issues . . . the amount in controversy,

the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its

likely benefits." Fed. R. Civ. P. 26(b)(1).

To start the Court compiles all the questions the witnesses should have answered.

- Hoffman:
    - Was that an attorney-client conversation that you had with Melinda Bowe?
    - Did you have any understanding that Melinda Bowe was your client?
    - Did you have at any time an understanding that Melinda Bowe was seeking legal advice from you?
    - Did you provide Melinda Bowe legal advice at any time?
    - Did you ever learn the elements of school law with respect to reporting allegations of abuse or neglect?
    - And how many of those [trainings] have involved, I  guess you would call it, developing sexual identity?
    - That's what happens with adolescents, correct?
- Bowe:
    - Such as what?
    - What was the conduct that you understood that you were investigating, Ms. Bowe?
    - Did you have an understanding of what type of conduct you were investigating?
    - What point in time did you have an understanding of what conduct you were investigating?
    - Did you have any discussions with your co-counsel regarding sexual orientation or perceived sexual orientation of Marissa Rys at any time?
    - [Did you represent Julia Scranton] As a member of the school district?
    - At any time during this investigation, was your firm doing anything other than representing the Clinton Central School District?

- o What is "general supervision" as opposed to "specific supervision"?
- o What does "general supervision" mean?
- o What is your – in your mind, the distinction between general supervision and your overview, which allowed you to revise the report repeatedly?
- o You weren't independent from the school district at any time during this investigation, correct?

With all the questions together, it is clear that allowing Bosman to re-depose Bowe and Hoffman and ask irrelevant questions would be disproportionate to the needs of the case. Only one of these questions goes to the heart of Rys' claim ("did you have any discussions with your co-counsel regarding sexual orientation or perceived sexual orientation of Marissa Rys at any time" is the only relevant question and it improperly seeks privileged communications). The rest are either duplicative, unnecessary, or wholly irrelevant. The questions *lack* of relevance is important because "the greater the relevance of information in issue, the less likely its discovery will be found to be disproportionate." *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 296 (E.D.N.Y. 2024). The inverse principle is true here: the relevance of the information is low, so calling both witnesses back is disproportionate. To end, "the ambit of relevance under Rule 26 is broad," but "it is not

unlimited," and continuing these depositions is "not proportional to the needs of the case." *Rattray v. City of New York,* No. 17-CV-8560, 2021 WL 5810903, at *2 (S.D.N.Y. Dec. 6, 2021) (denying motion to compel where the request was "overly broad and unnecessary" to "show bias"). As a result, the Court denies Rys' motion to compel.

## C. Sanctions

Courts may issue sanctions for poor attorney behavior at depositions. Fed. R. Civ. P. 30(d)(2). The Federal Rules empower courts to issue sanctions where "a person . . . impedes, delays, or frustrates the fair examination of the deponent." *Id.* Importantly, the text of Rule 30 does not require a party to move for sanctions. *Id.* This means that Courts can, on their own, issue sanctions. *See id*; *see also Sicurelli v. Jeneric/Pentron, Inc.*, No. 03-CV-4934, 2005 WL 3591701, at *8 (E.D.N.Y. Dec. 30, 2005) (cleaned up) ("The decision to impose sanctions against an attorney for improper conduct during a deposition is within the discretion of the court"). But the standard remains the same. The Court must find that the sanctionable-party's conduct impeded, delayed, or frustrated the deposition. *See, e.g., Chawla v. Metro. Oral Surgery Assocs., P.C.*, No. 11-CV-6248, 2014 WL 4678023, at *7

(E.D.N.Y. Sept. 19, 2014) (sanctioning an attorney under Fed. R. Civ. P.

30(d)(2) where the sanctioned attorney's conduct impeded, delayed, and

frustrated the deposition).

The obstructionist behavior—of both lawyers —abounds the

record. For example:

> **Ferrara**: Objection to form. If you know what that is. That's a medical question.
>
> **Bosman**: I object to counsel interfering with the deposition. Asking you again to restrict your objection —
>
> **Ferrara**: I instruct the witness not to answer.
>
> **Bosman**: I note for the record counsel is constantly interrupting me.
>
> **Ferrara**: Go ahead and finish.
>
> **Bosman**: I'm asking you to please restrict your objections to form or privilege, without making speeches.
>
> **Ferrara**: And I would request counsel to ask pertinent questions that have been permitted by the court. You're now asking for medical testimony.

(Hoffman Deposition, Dkt. 207-1, pgs. 84-85, at lns. 15-7).

* * *

> **Ferrara:** That's a different question. You can answer it.

**Bosman**: I would ask counsel to stop with the comments, please.

**Ferrara**: Then why don't you ask a question that can be understood, and I won't have to object.

(Hoffman Deposition, Dkt. 207-1, pg. 95, at lns. 3-9).

* * *

**Bosman**: Wait.

**Ferrara**: Let her answer the question.

**Bosman**: Let me ask the question. Otherwise we'll be here until midnight.

**Ferrara**: No, we're not.

**Bosman**: Answer the question directly. If you keep going on into something I didn't ask, I have to ask it again.

**Ferrara**: Let her answer your question.

**Bosman**: You be quiet.

**Ferrara**: You are not going to do this to my witness. You're going to allow her to finish the question. If you're not going to let her do that then we'll be done today.

**Bosman**: She's your witness or your client?

**Ferrara**: She's both

**Bosman**: She's my witness. Your client. Go ahead.

**Ferrara**: My client can finish her answer if you can remember the question.

(Hoffman Deposition, Dkt. 207-1, pgs. 118-19, at lns. 8-8).

* * *

**Spagnoli**: Not allowing the witness to finish her answer to the question.

**Bosman**: Stop it, Charles. That's it, I can't complete the deposition. Counsel interrupting my deposition, I'm not able to conclude it without interruption, so I'm asking the witness to refer to a specific page on a document. And he is insisting that she go forward. This would cause us to go back through the document and I am objecting to counsel' interference yet again.

**Ferrara**: Yes, let the record reflect the witness has not completed her answer to the previous question and would like the opportunity to finish her answer to the question.

(Hoffman Deposition, Dkt. 207-1, pg. 139, at lns. 4-22).

* * *

**Bosman**: Stop it, counsel.

**Ferrara**: No, you stop it.

**Bosman**: I want this witness to answer the question, not you.

**Ferrara**: I want you to ask a question that's relevant. This has nothing to do with the factual investigation or the final report. You're asking for her opinion and her legal conclusion. She's not here for that.

(Hoffman Deposition, Dkt. 207-1, pg. 154, at lns. 16-25).

\* \* \*

**Spagnoli**: I'm making an objection. And it was well founded, as you know.

**Bosman**: No. It was not well founded at all. It was typical of you, but it was not well founded. I'm going to show you —

**Spagnoli**: Let's stay away from personal comments. Okay, Ms. Bosman?

**Bosman**: Ditto. Yeah. I'm ready. Let's look at — does an attorney have an obligation to be honest with witnesses when they interview them

**Ferrara**: Objection to form. Now you're asking for expert testimony. I'm going to direct the witness not to answer. She's not here to be an expert to you or your client.

**Bosman**: (Indiscernible simultaneous speech) no. You don't need to go on and on. You're taking up too much time. Certify the question. Did you or Ms. Hoffman represent to witnesses in this matter during the investigation that you were independent?

**Ferrara**: Objection to form. You can answer, to your knowledge.

**Bosman**: Well, of course it's to her knowledge.

**Ferrara**: Well, no. We don't ask the question that way. Why don't you preface the question that way and I won't have to object.

**Bosman**: Note my objection to the continuing interruption and comments of counsel.

(Bowe Deposition, Dkt. 207-1, pgs. 110-111, at lns. 13-22).

* * *

> **Ferrara**: There's no waiver, A.J.
>
> **Bosman**: There's nothing but form objections, P.G. So you get to object to form. What you just did —
>
> **Ferrara**: Object to form objections on the record, A.J. I can't help it if you're asking improper questions.
>
> **Bosman**: You just gave your client legal advice on the record, P.G.
>
> **Ferrara**: I did not give her legal advice on the record.
>
> **Bosman**: We'll see.

(Bowe Deposition, Dkt. 207-1, pg. 166, at lns. 3-14).

Sadly, these examples are not an exhaustive list. In fact, the record shows the questions asked in bad faith and in violation of the Court's Discovery Order, the numerous disruptions, speaking objections, *ad hominem* attacks, and instructions not to answer derailed both depositions. *See, e.g., Morales v. Zondo, Inc.*, 204 F.R.D. 50, 54 (S.D.N.Y. 2001) (imposing sanctions for among other things "instructions not to answer, instructions how to answer, colloquies,

interruptions, and ad hominem attacks" that disrupted the deposition.) That conduct is sanctionable.

Both Bosman's and Ferrara's conduct is equally sanctionable. Individually Ferrara's conduct is sanctionable. Ferrara consistently made asked and answered objections—which counsel knows (or should know) the Federal Rules do not recognize. *See, e.g., Cordero v. City of New York*, No. 15-CV-3436, 2017 WL 2116699, at *8 (E.D.N.Y. May 12, 2017) (imposing sanctions where among other things the attorney lodged a plethora of speaking and asked and answered objections and repeatedly instructed the witness not to answer questions). Worse still, Ferrara asked Bosman for clarifications but "it is not counsel's place to interrupt if a question is perceived to be potentially unclear to the witness." *Veckinburg v. Equifax Credit Info.*, No. 04-CV-673, 2005 WL 8160002, at *2 (E.D.N.Y. Dec. 19, 2005).

Bosman's behavior was no better. Although she was the questioner, Bosman's questions seemed tailor made to "frustrate the examination of the deponent." Fed. R. Civ. P. 30(d)(2). Several of her questions ran roughshod over this Court's Discovery Order. Many were intended to plainly invade attorney client and work product privileges.

The endeavor to extract information about a clearly irrelevant confidential settlement of an unrelated lawsuit was indefensible. Bosman's statements on the record seem to indicate her belief that there were no limitations on the questions she could ask. All in all, both lawyers engaged in conduct that is sanctionable.

This conduct is why the Court is sanctioning both attorneys.[3] To be sure, "courts in the Second Circuit have declined to impose sanctions based solely on voluminous, unwarranted, and argumentized objections where opposing counsel was not prevented from completing the deposition." *Cordero v. City of New York*, No. 15-CV-3436, 2017 WL 2116699, at *6 (E.D.N.Y. May 12, 2017). Further, courts have declined to impose sanctions "where heated exchanges among counsel during the deposition . . . did not significantly frustrate the progress of the examination." *Hague v. Celebrity Cruises, Inc.*, No. 95-CIV-4648, 2001 WL 546519, at *3 (S.D.N.Y. May 23, 2001). But that is not what we have here. Before this Court is the conduct of two attorneys who engaged in *ad hominem* attacks, gave long winded speeches, and

---

[3]  The sanctions the Court imposes are monetary and "do not dispose of any claim or defense in this action," so it has "the authority impose" sanctions. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018).

interrupted each other at every turn. *See Juice Creative Grp., LLC v. UncommonGood, Inc.,* No. 3:22-CV-01175, 2025 WL 2083210, at *6 (D. Conn. July 24, 2025) (imposing sanctions where the attorney made long winded speeches, engaged in unacceptable behavior, and interrupted the other attorney). "There is a duty imposed upon counsel to deal fairly and sincerely with . . . opposing counsel so . . . that actions may be litigated in an orderly manner." *Learning Int'l, Inc. v. Competence Assur. Sys. Inc.,* No. 90-CV-2032), 1990 WL 204163, at *3 (S.D.N.Y. Dec. 13, 1990) (cleaned up). This Court includes a link to Civility in Litigation: A Voluntary Commitment "as a reminder of your duties and liberties as an attorney.[4] Because both attorneys seem to have forgotten such an important aspect of practice, the Court sanctions both attorneys $500 (payable to the Clerk of the Court) as a helpful reminder and future deterrent.

---

[4] Northern District of New York. ATTORNEY ADMISSIONS https://www.nynd.uscourts.gov/attorney-admissions (last checked October 2, 2025).

## IV.   CONCLUSION

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED**, that Plaintiff's motion to compel (Dkt. 219) is

**DENIED**, and it is hereby further

**ORDERED**, that attorneys Paul G. Ferrara and A.J. Bosman are each sanctioned in the amount of $500.00 and their payments should be made payable to the United States District Court for the Northern District of New York within ten (10) days of the date of this Memorandum-Decision & Order, unless an appeal of this Order is taken in which case the Court stays the obligation to make payment until ten (10) days after an Order on the appeal is entered.

November 12, 2025.

                                                  _____

                                                  Hon. Mitchell J. Katz
                                                  U.S. Magistrate Judge